**WATSONTOWN BRICK COMPANY,**
**Plaintiff,**

v.

**HERCULES POWDER COMPANY,**
**Defendant.**

**Civ. A. No. 7276.**

United States District Court
M. D. Pennsylvania.

Jan. 12, 1962.

Candor, Youngman & Gibson, Williamsport, Pa., for the plaintiff.

Furst, McCormick, Muir, Lynn & Reeder, Williamsport, Pa., for the defendant.

FOLLMER, District Judge.

This is an action by plaintiff to recover damages alleged to have been caused by negligence on the part of defendant, Hercules Powder Company, in setting off a blast at plaintiff's quarry and manufacturing plant in Delaware Township, Northumberland County, Pennsylvania. The matter is presently before the Court on motion of defendant for an order adding necessary parties plaintiff. From the affidavits filed in connection with the pending motion it appears that Watsontown was insured by a number of insurance companies and that the said insurance companies effected settlement with Watsontown under the said policies in the aggregate sum of $73,096.73 representing a portion of plaintiff's claimed losses. The adjustment between Watsontown and the covering insurance companies was made by what is commonly referred to as the "loan receipt method." The policies do not say anything concerning adjustment by the loan receipt method and this was done as a voluntary matter between the insurance companies and the insured. Defendant has moved under Rule 21 of the Federal Rules of Civil Procedure, 28 U.S.C.A., to add the insurance companies as necessary parties plaintiff as being real parties in interest under Rule 17(a) of the Federal Rules of Civil Procedure because as partial subrogees or assignees of plaintiff they are real parties in interest under Pennsylvania law and ought to be joined under the provisions of Rule 19(b) of the Federal Rules of Civil Procedure.

No Federal right is involved in this action and so the substantive law of Pennsylvania will govern.[1] As to whether a real party in interest is also a necessary party and not merely a proper one is a procedural question and is governed by the Federal Rules of Civil Procedure.

It is clear that by the substantive law of Pennsylvania the loan receipt method of settlement of claims by insurance companies is legal and binding and with no qualifications or reservations as to the type of claims involved.[2]

In Arabian American Oil Company v. Kirby & Kirby, Inc., 1952, 171 Pa.Super. 23, 28, 90 A.2d 410, 412, the Court said, inter alia: "Ever since the exhaustive opinion in Luckenbach v. W. J. McCahan Sugar Refining Co., (1918) 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, the legality of such agreements cannot be questioned and they must be given effect regardless of the stipulation of any bill of lading that the carrier shall have the benefit of insurance effected by the shipper." In further support of this proposition the Court cites The Plow City, 122 F.2d 816, 819 (3 Cir., 1941).

Luckenbach, of course, is a landmark case. There Mr. Justice Brandeis said in part: (248 U.S. 139, 148, 149, 39 S.Ct. 53, 55)

"Agreements of this nature have been a common practice in business for many years. * * * It is clear that if valid and enforced according to their terms, they accomplish the desired purpose. They supply the

1. 3 Moore F.P.2d Ed. ¶ 17.07, Page 1330.

2. Arabian American Oil Company v. Kirby & Kirby, Inc., 1952, 171 Pa.Super. 23, 90 A.2d 410.

shipper promptly with money to the full extent of the indemnity or compensation to which he is entitled on account of the loss; and they preserve to the insurers the claim against the carrier to which by the general law of insurance, independently of special agreement, they would become subrogated upon payment by them of the loss. The carrier insists that the transaction, while in terms a loan, is in substance a payment of insurance; that to treat it as if it were a loan, is to follow the letter of the agreement and to disregard the actual facts; and that to give it effect as a loan is to sanction fiction and subterfuge. But no good reason appears either for questioning its legality or for denying its effect. * * * Whether the transfer of money or other thing shall operate as a payment, is ordinarily a matter which is determined by the intention of the parties to the transaction. * * * It is creditable to the ingenuity of business men that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice."

Defendant contends that Luckenbach does not apply and never was intended to apply to the situation in the case at bar. I do not think that the cases support this contention. In The Plow City, supra, the Court disposed of this matter in one short paragraph, to wit: (122 F.2d 816, 818, 819)

"The appellees urge that the libel should have been dismissed because it was not brought by the real party in interest, contending that the appellant has received payment for its losses from the underwriters, Fidelity Phoenix Fire Insurance Company. This is not the fact. The libellant's underwriter did not pay its losses within the terms of the policy, but gave the appellant the sum of $7,420.63 as a loan which was repayable in the event and to the extent that the appellant recovered against any third party for the damage to the goods in transit. The receipt is similar to that which the Supreme Court passed upon in the case of Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522. See, also, Automobile Insurance Co. v. Springfield Dyeing Co., 3 Cir., 109 F.2d 533, 537. * * * "

No exceptions or reservations to Luckenbach are there made.

In Kooser v. West Penn Railways Co., 1941, 42 Pa.Dist. & Co. R. (Pa.) 701, the Court in approving the "loan receipt" method of payment held that the method so used did not make the insurance company the "real party in interest" in an action instituted by the automobile owner against the alleged wrongdoer to recover for the specified damages, and it need not therefore be joined as plaintiff in such an action under Rule 2002 of the Pennsylvania Rules of Civil Procedure. The Court said, inter alia, quoting from Ash v. Rhodes, 5 N.Y.2d 939 (City Court, Binghamton, 1938):

"'But the "loan receipt" was devised for the very purpose of avoiding the rules of subrogation incident to cases where actual payment by the insurer to the insured has been made. And the sole question to be answered in the instant case is whether the insured and the insurer accomplished their purpose by the use of the device referred to as the "loan receipt." I think Justice Brandeis answered that question in the affirmative in the Luckenbach Case hereinbefore referred to.'" [3]

In First National Bank of Ottawa v. Lloyd's of London, 1940, 7 Cir., 116 F.2d 221, 226, the Court takes notice of the

**3.** See also, Hopkins v. Bailey, 1941, 44 Pa. Dist. & Co.R. (Pa.) 26; Merriman et al. v. Cities Service Gas Co., et al., 1951, D.C.S.D.Mo., 11 F.R.D. 165.

broad acceptance of the loan receipt method of settlement as follows:

"For many years it has been customary for insurers, in order to save rights of their assureds and to promptly place them in funds, so that their business might be continued without embarrassment, to lend to their assureds the amount of the loss, repayable only out of moneys collected on account of the loss. There is a line of cases approving such arrangements and holding that such loans are not a payment of insurance. (Citing Luckenbach, supra, and others)." [4]

That defendant cannot be subject to financial embarrassment by this method of settlement is well shown in Braniff Airways, Inc. v. Falkingham et al., 1957, D.C.Minn., 20 F.R.D. 141, 144, as follows:

" * * * *when the insured brings suit alone, to recover for the whole loss, the controversy can be adjudicated completely and finally without the joinder of the insurer subrogees, and the defendant will have only one lawsuit to defend.* That this possibility of having to defend several suits if the partial insurer subrogee were allowed to bring suit under the Federal Tort Claims Act was of concern to the government in the Aetna case is evidenced by the fact that the government made this factor its principal argument against allowing such suits when two of the four cases were before the Third Circuit Court of Appeals. It is not unlikely, therefore, that the Supreme Court was speaking of the insurer subrogees and the insured being necessary parties only in the situation where suit has been brought by an insurer subrogee for only part of the loss and that its statement was not intended to apply to the situation where the insured has brought suit to recover the full loss, a situation which the Court did not have before it.

"The instant case as presently aligned cannot possibly embarrass movant financially. Eventually there can be but one recovery. A judgment in favor of plaintiff, who is the party in legal interest, would insulate movant against another suit by plaintiff's insurer. In any event, the recovery may be impressed with a trust in favor of the party claiming the right to subrogation."

Rule 2002, Pennsylvania Rules of Civil Procedure provides, inter alia, as follows:

"Rule 2002. Prosecution of actions by real parties in interest. Exceptions

"(a) Except as otherwise provided in clauses (b), and (c) and (d) of this rule, all actions shall be prosecuted by and in the name of the real party in interest, without distinction between contracts under seal and parol contracts.

\* \* \* \* \* \*

"(d) Clause (a) of this rule shall not be mandatory where a subrogee is a real party in interest."

Goodrich-Amram § 2002(d)—1 comments on this Rule as follows:

"Under Subdivision (d) the option of determining whether suit is to be brought under the prior practice or under Rule 2002 lies with the insurer and insured. The defendant cannot challenge the choice and there is no need to aver in the statement of claim that it was decided to bring suit under the rule or under the former practice. Clearly the option would be meaningless if the defendant could, by petition, compel the joinder of the insurer as a plaintiff against the insurer's will. The option is given to the plaintiff and the court cannot control the plaintiff's choice."

---

4. See also, Kerna et al. v. Trucking, Inc., 1944, D.C.W.D.Pa., 3 F.R.D. 365.

Defendant contends that this Rule was adopted for a specific purpose alien to the matter here in issue. If that is so, it has not been so construed by the courts.

In Kerna et al. v. Trucking, Inc., D.C. W.D.Pa., 1944, 3 F.R.D. 365, 368, the Court said:

"The Pennsylvania courts held, even before the amendment of Rule 2002 by adding the proviso in subsection (d), that an insurance company which insured an automobile owner and took a loan receipt similar in form to the ones under consideration in the instant case, was not the 'real party in interest' who must be joined as a party-plaintiff. * * *

"If we were to apply the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, to this case, we would arrive at the same result. Rule 17(a) provides: 'Every action shall be prosecuted in the name of the real party in interest;' but the Circuit Court of Appeals of this Circuit held in Re The Plow City, 122 F.2d 816, 818, that an insurance company which loaned the assured the amount of his loss to be repaid out of any recoveries by the assured from the party responsible for the loss, was not a 'real party in interest' who must bring suit. * * * *"

In Automobile Ins. Co. of Hartford, Conn. v. Springfield Dyeing Co., Inc., 1940, 3 Cir., 109 F.2d 533, 537, the Court following Luckenbach said:

" * * * The loan receipt, which is in evidence, makes plain its purpose and effect. The transaction was precisely what, under the circumstances, it purported to be, a loan made in a manner which is both legally valid and effective for the purpose. * * *"

As indicated above, the Court of Appeals of this Circuit in The Plow City followed Luckenbach and the Pennsylvania Rule without noting a single exception.

It seems to me that the rationale of this whole problem is well set forth in the comment on "loan receipts" in 157 A.L.R. 1268 as follows:

"Insurers, being reluctant to appear in lawsuits as formal parties because juries are supposed to be prejudiced against insurers, and bearing in mind the fact that if they can prevent subrogation they can avoid appearing in an action, have quite generally adopted the policy of settling policy claims by making a loan. In fact this seems to be the primary motive for making such a settlement in the vast majority of the cases. This motive was discussed in Merrimack Mfg. Co. v. Lowell Trucking Corp. (1944) [182 Misc. 947], 46 NYS (2d) 736, wherein the court said: 'The "Loan Receipt" is a device by the use of which insurance may be paid to avoid some of the consequences of subrogation. Whatever reasons there may be of a business character for the insurance company shying away from subrogation, there is one of great significance which manifests itself when the contracting parties appear before a court and jury. Insurance companies by experience find that when their financial interest is discovered by a trial jury in a suit they fare not so well. In their reluctance to reveal their presence in litigation, insurance carriers do not stand alone. The courts have decided times without number that the unnecessary disclosure to the jury of the presence of a liability insurance company in a negligence trial warrants a mistrial. . . . Should the court, upon piercing the mantle of the "Loan Receipt" and discerning its clear objective, enforce the letter of § 210, Civil Practice Act, and thus condemn the practice of using "Loan Receipts?" . . . What is wrong with the "Loan Re-

ceipt?" The objection raised to its use emanates from the alleged wrongdoer. He insists on being confronted in court by the person who, at the time the suit is started, he considers in fact possessed the claim against him. Section 210, Civil Practice Act, a sound preventative against paying claims twice, justifies defendant's attitude on this motion. His complaint would find immediate redress if there were fear that a second claim could be urged for the one wrong. The "Loan Receipt" admits of no such injustice. The objection narrows merely to the name of the party in the suit. Defendant's attorney argues that his client should defend against an insurance company by name. . . . There being no danger of more than one recovery against the wrongdoer, the court is not justified in inquiring into the motives of the parties to the "Loan Receipt." ' "

Defendant's motion to add necessary parties plaintiff will be denied.