**CITY STORES COMPANY, Appellant,**

v.

**LERNER SHOPS OF DISTRICT OF COLUMBIA, INC., et al., Appellees.**

**No. 21642.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 23, 1968.

Decided March 6, 1969.

Mr. Robert C. Maynard, Washington, D. C., with whom Mr. Francis L. Casey, Jr., Washington, D. C., was on the brief, for appellant.

Mr. Jack Rephan, Washington, D. C., with whom Mr. Marshall E. Miller, Washington, D. C., was on the brief, for appellees.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and BURGER, Circuit Judge.

WILBUR K. MILLER, Senior Circuit Judge:

The appellees, Lerner Shops of District of Columbia, Inc., Feil Brothers Corporation and Mary Jane Stores of Washington, Inc., sued the appellant, City Stores Company, for losses sustained by them in a fire which they alleged was caused by the negligence of appellant in permitting combustible materials to accumulate in an alley between their places of business and that of City Stores.

Through interrogatories, the appellant learned that the appellees were insured against fire loss; that Feil Brothers Corporation had received from its insurance carrier a sum equal to the losses claimed by it, and that the other two appellees had received from their insurance carriers sums equal to more than 50 per cent of the losses claimed by them. The appellees said in their answers to the interrogatories that they "executed loan receipts [1] in connection with payments made to them as a result of their losses," and that "[t]he loan receipts were executed in lieu of any subrogation agreements."

The appellees erred in saying they executed the loan agreements "in lieu of subrogation agreements;" for when an insurer pays a loss, it is by operation of law subrogated to the insured's right of action against a third party. This is called legal or equitable subrogation, and does not arise from nor depend upon contract; so in no event would it have been necessary for the appellees to execute a subrogation agreement. In Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962), the Supreme Court said in footnote 12:

" 'The right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties.' Memphis & L. R. R. Co. v. Dow, 120 U.S. 287, 301–302 [7 S.Ct. 482, 488–489, 30 L.Ed. 595] (1887)."

---

1. The loan receipt executed by Feil Brothers Corporation was as follows:

"RECEIVED FROM *Lumberman's Mutual Casualty Company Twenty seven thousand eight hundred ninety and 18/100*—Dollars, as a loan and repayable only to the extent of any net recovery *we* may make from any person or persons, corporation or corporations, on account of loss by *fire* to *our* property on or about *September 7, 1963* or from any insurance effected by such person or persons, corporation or corporations.

"As security for such repayment, *we* hereby pledge to said *Lumberman's Mu*-

*tual Casualty Company* the said recovery and deliver to it all documents necessary to show *our* interest in said property, and *we* agree to enter and prosecute suit against such person or persons, corporation or corporations on account of said claim for said loss, with all due diligence, at the expense and under the exclusive direction and control of said *Lumberman's Mutual Casualty Company*."

The loan receipts executed by Mary Jane Stores and Lerner Shops are substantially similar.

It follows that the appellees here did not execute the loan agreements "in lieu of subrogation agreements;" rather obviously they did so for the purpose of avoiding the equitable subrogation which arises from payment by the insurer.

Conceiving that, despite the loan receipts, the payments made by the insurance companies were not loans, but in reality were in settlement of claims under the policies and that, therefore, the insurers were by operation of law subrogated to the rights of the appellees and were *pro tanto* the real parties in interest, the appellant moved that the court require the joinder of the insurance companies as parties plaintiff. This was in accord with the following statement in United States v. Aetna Surety Co., 338 U.S. 366, 380–381, 70 S.Ct. 207, 215, 94 L.Ed. 171 (1949):

" * * * Rule 17(a) of the Federal Rules of Civil Procedure * * * provides that 'Every action shall be prosecuted in the name of the real party in interest,' and of course an insurer-subrogee, who has substantive equitable rights, qualifies as such. If the subrogee has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name. 3 Moore, Federal Practice (2d ed.) p. 1339. If it has paid only part of the loss, both the insured and insurer (and other insurers, if any, who have also paid portions of the loss) have substantive rights against the tortfeasor which qualify them as real parties in interest."

The appellees, whose activities in this litigation are exclusively directed, controlled and financed by their insurance companies, opposed the motion. They argued that the loan receipts evidenced actual loans and not payments in settlement of claims; that, therefore, the insurance companies were not subrogated to the rights of the insured stores and were not the real parties in interest.

With respect to this motion the District Court entered the following order:

"This matter having come on for hearing on motion of the defendant to join certain insurance companies as real parties in interest, and it appearing to the Court that the issue involved herein is a controlling issue of law for which there is no precedent in this jurisdiction, and it further appearing that the authorities in other Federal courts are in such conflict that there is a substantial ground for difference of opinion on this issue, and it further appearing that erroneous decision on this motion would ultimately necessitate a new trial with proper parties before the court, and that therefore an immediate appeal from the order would materially advance the ultimate termination of this litigation, it is by the Court this 8th day of November, 1967

"ORDERED that defendant's motion be and the same is hereby denied, without prejudice to the defendant to seek an immediate appeal to the United States Court of Appeals for the District of Columbia Circuit within ten days of this order, pursuant to the provisions of 28 U.S.C. § 1292(b)."

We granted the application of City Stores for permission to appeal from this interlocutory order and, in consequence, this appeal was taken by it.

Whether the insurers are the real parties in interest who are required by Rule 17(a) to sue in their own names depends on whether the sums paid by the insurance companies were really settlements of claims under the policies, or were *bona fide* loans as the loan receipts purported to show. If the former, the loan receipts were merely subterfuges used to conceal the fact of actual settlement and so to avoid the effect of subrogation and the consequent impact of Rule 17(a); if the latter, the insurance companies could have the exclusive direction and control of the suit filed in the names

of the appellees, without appearing therein as plaintiffs or otherwise.

In their arguments to the District Court, the appellees relied principally upon Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U.S. 139, 39 S. Ct. 53, 63 L.Ed. 170 (1918), which they said unqualifiedly holds that an insured who has executed a loan receipt to an insurance company is, nevertheless, the real party in interest in a suit against a third party.

In the *Luckenbach* situation, the insurer's liability was not absolute; it was contingent only, and the resolution of the contingency might have required lengthy litigation. In those circumstances, the insurer lent to the insured the amount of its claim, payable only from proceeds which might be recovered from another whose liability, if any, preceded that of the lending insurer. In other words, in that case there was a valid reason for the use of the loan receipt; and it was the prompt payment to the insured, made possible by the lending arrangement, which caused Mr. Justice Brandeis to compliment the insurance industry on its altruism. Here the insurer's liability was not contingent, and the only reason apparent to us for the use of the loan receipts was to avoid the effect of subrogation; in fact, the appellees offer no other explanation, and in effect admit that such was the motive of the insurers.[2]

In most cases in which insurance companies use the loan agreement method in settling claims, their purpose is to avoid appearing openly in litigation for fear of prejudice in the minds of the jury. In Watsontown Brick Co. v. Hercules Powder Co., 201 F.Supp. 343 (M.D. Pa.1962), a case cited by the appellees, the court approved the following quotation from 157 A.L.R. 1268:

> "Insurers, being reluctant to appear in lawsuits as formal parties because juries are supposed to be prejudiced against insurers, and bearing in mind the fact that if they can prevent subrogation they can avoid appearing in an action, have quite generally adopted the policy of settling policy claims by making a loan. In fact this seems to be the primary motive for making such a settlement in the vast majority of the cases. * * *"

Thus the insurers in this case have an unworthy motive, if not an improper and illegal purpose, in attempting to avoid subrogation by frustrating the enforcement of Rule 17(a).[3]

The appellees realize the limited scope of the *Luckenbach* ruling, for in their brief to us they admit the liability of the insurance company in that case was contingent. In argument here they abandon the reliance upon the *Luckenbach* case, which they vigorously asserted in the District Court, and instead say, "[T]his Court should consider primarily

---

2. For example, they say the loan receipt is a "valid method of settling losses," and express the belief "that the fact that the parties intend to use the loan receipt transaction to enable the insured to sue in his name, thus avoiding the conventional subrogation action in the name of the insurer, is immaterial."

3. *Cf.* Celanese Corp. of America v. John Clark Industries, 214 F.2d 551 (5th Cir. 1954), a case cited by the appellees, where the court criticized the party invoking Rule 17(a) because it had an improper and illegal purpose in doing so. The opinion upheld the use of a loan receipt —citing the *Luckenbach* case—and said, at pages 556–557:

> "* * * Its [defendant's] real, its only concern was not to have the insurance companies brought into the suit to protect itself against being again sued or with respect to offsets or claims against them but for the possible prejudice which plaintiff might suffer in the minds of the jury because of the knowledge that plaintiff was insured. Such a purpose is neither a proper nor a legal purpose. The courts have uniformly condemned it."

Here, the insurance companies are tarred by the same brush; their motive in seeking anonymity is improper and perhaps illegal.

the decisions of other federal courts which have decided this issue under circumstances similar to those now before this Court."

In support of their theory that the holding of the *Luckenbach* decision, limited as it was to a situation where the insurer was only contingently liable, has been expanded by subsequent federal decisions to cover a situation in which the liability of the insurer was absolute, the appellees cite several cases from district courts and courts of appeals in other circuits. Thus, the appellees say in effect that federal cases since the *Luckenbach* opinion have enlarged its holding by unqualifiedly approving the insurer's use of the loan receipt to avoid the necessity of suing in its own name.

We might be impressed by that assertion if in the subsequent federal decisions the courts had reached their conclusions through sound and independent reasoning. But, almost without exception, the district and circuit court cases cited by the appellees upholding the use of the loan receipt where the liability of the insurer is absolute base their holdings upon the *Luckenbach* case, without any process of reasoning of their own to justify their expansion of its ruling.[4] This clearly indicates, we think, that the cases cited by the appellees, and others of similar import, were based upon a misapprehension of the true holding of the *Luckenbach* decision.

During the half century since it was written, that case has been often cited by federal district and circuit courts, and almost as often has been misunderstood. As we have shown, it does not hold that an insurer whose liability is absolute may pay the claim of an insured and avoid the consequences of subrogation by calling the payment a loan and taking a loan receipt from the insured. Consequently, it does not support the subsequent federal cases which so hold.

■ Our consideration of this case of first impression is not aided by the federal cases cited by the appellees which, as we have said, do little more than cite the *Luckenbach* case to support their expansion of its holding. Decisions of district courts and other courts of appeals are, of course, not binding on us and are looked to only for their persuasive effect. If they fail to persuade by the use of sound and logical reasoning, they will not be followed, no matter how great their number.

We observe that the loan agreement reproduced in note 1 is not an unconditional promise to pay at a time certain, and does not provide for interest. It can be more accurately described as a complete surrender to the insurer of the insured's right of action against third

---

4. Typical of the cases cited by the appellees in this connection is Sanders v. Liberty Mutual Ins. Co., 354 F.2d 777 (5th Cir. 1955), where the court said, without elaboration:

"* * * The Supreme Court in Luckenbach v. W. J. McCahan Sugar Refining Co., 1918, 248 U.S. 139, 148, 149, 39 S.Ct. 53 * * * approved the use of loan agreements and upheld the right of the insured to sue in his own name. That decision has been consistently followed. * * *"

Also typical is Peoples Loan & Finance Corp. v. Lawson, 271 F.2d 529, 532 (5th Cir. 1959), where the court said:

"Appellant's first contention that payment by the insurance company, notwithstanding the loan receipt, was not a loan but a payment, and the company, as subrogee, should have been made a party to the suit, may be summarily disposed of. It is sufficient to say of it that the law is settled to the contrary and to refer in support to Luckenbach v. W. J. McCahan Sugar Rfg. Co., 248 U.S. 139, at pages 148–149, 39 S.Ct. 53 * * * and to 39 Am.Jur., 'Insurance', Sec. 1337, pp. 1002–3, 1959 Supp. p. 222. * * *"

Thus in these two cases the court based its sweeping and unqualified holding that a loan agreement does not evidence a payment of a claim upon the *Luckenbach* case, where the insurer's liability was contingent only, and gave no reason whatever for extending its holding. So it was with almost all the cases cited by the appellees, and in none of them is there any persuasive reasoning to support their conclusions.

parties. By executing such a document, the insured *simply sells to* the insurance company the right to use his name as party plaintiff in a suit brought against a third party which is to be exclusively directed and controlled by the insurer at its expense and for its benefit. The only consideration to the insured for such a sale is that perhaps the settlement will be received a bit earlier than if he had not executed the loan agreement.

 It will not do to say, as some courts have done, that the loan agreements express the intentions of the parties and must therefore be given effect. If, as here, their only purpose was to avoid the requirement of Rule 17(a), and even if both parties so intended, we think it quite improper to give effect to such a bold and bald evasion of a federal rule of practice and procedure. Obviously the loan agreements were prepared by the insurance companies and must be construed most strongly against them. And it is elemental that the characteristics and purpose of a document—not the name given to it by the parties—determine its nature.

 Some of the cases cited by the appellees give as a reason for upholding a loan agreement executed to an insurer whose liability was absolute that the defendant who had invoked Rule 17(a) had not demonstrated that he would be prejudiced by its denial. This does not seem to us to be a valid reason; our view is that a defendant is entitled to the benefit of Rule 17(a) without showing he will otherwise be prejudiced. Rule 17(a) is plain, common sense: a defendant has the right to require the joinder of the real party in interest as a party plaintiff. It does not seem sensible to say that an insured who has been paid in full by his insurer is nevertheless the real party in interest merely because of a sham "loan agreement" which is a transparent subterfuge to avoid subrogation and to evade a federal rule.

 The appellees say, "The use of the loan receipt method of settling losses between an insurance company and its insured is well established." The statement is an unwitting admission that the loan receipt is a "method of settling losses" and, therefore, is not evidence of a loan. We treat this, and the appellees' statements set forth in note 2, as tantamount to concessions that, when an insurer whose liability is absolute settles a claim by the loan agreement method, it is subrogated to the rights of the insured and so is the real party in interest in a suit against a third party. And we so hold, upon what we consider valid reasoning.

The judgment of the District Court will be reversed and the case remanded with directions to grant appellant's motion that the insurance companies be made parties plaintiff, as the real parties in interest.

It is so ordered.

BURGER, Circuit Judge (dissenting):

I find myself unable to join the majority's reversal of the District Court's denial of the motion to compel joinder of plaintiff-appellees' insurance carriers pursuant to Rule 17(a). The practical outlines of this litigation and the question for determination must be looked at: The defendant in this action for damages would prefer to have the jurors know that the contest was between an insurance company and the defendant store rather than between two private litigants. And of course this is why the insurer for its interests wants to keep "out of sight." I can see no compelling reason of public policy or of common sense for failing to give effect to the agreements of the parties. It seems to me that there may well be some public policy served in having the triers decide the issues uninfluenced by the circumstance that "a large insurance company" will pay the bill.

I am troubled by the suggestion that "the insurers in this case have an *unworthy* motive, if not an improper and illegal purpose, in attempting to avoid subrogation by frustrating the enforcement of Rule 17(a)." (emphasis added) I see nothing "unworthy," "illegal," or

even undesirable in seeking to have the triers evaluate the case without regard to liability coverage.

Since Celanese Corp. v. John Clark Indus., 214 F.2d 551 (5th Cir. 1954), which is cited and quoted by the majority on the question of improper motivation involved the same kind of loan receipt we have before us, a close examination of that opinion is warranted. The opinion pointed out that:

> [T]he purpose of the practice long obtaining in the federal courts and now set forth in Rule 17 * * * that every action shall be prosecuted in the name of the real party in interest, *is to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment* * * *.
>
> * * * Its [the defendant-appellant's] real, its only concern was not to have the insurance companies brought into the suit to protect itself against being again sued * * * but for the possible prejudice which plaintiff might suffer in the minds of the jury because of the knowledge that plaintiff was insured. *Such a purpose is neither a proper nor a legal purpose.* The courts have uniformly condemned it.

*Id.* at 556–557 (footnote omitted). As I read Judge Hutcheson's opinion in *Celanese,* it supports the position I take in dissent and should give no comfort to the majority.

I am unable to distinguish the *Celanese* situation from the one before us here. Defendant-appellant would prefer to be sued by a named insurance company so that a jury verdict might be moderated by the realization that the injured plaintiff has coverage for his losses. This motivation seems hardly more worthy than the insurer's motive in suing in the insured's name so that its recovery will

not be improperly minimized when the jury takes cognizance of the fact that an insurance company is suing to recover the losses in question.

The insurers and policyholders have entered a "loan receipt agreement" for the purpose of avoiding subrogation. The parties call their agreement a loan, but they also *intend* that it be one if only for its operation in preventing subrogation. When parties enter agreements with the desire to affect their private legal relationships and rights, the agreements should not be nullified unless compelling policy reasons so command. I for one can discover no policy considerations which demand the naming of insurers as parties to litigation when not to do so is to allow the jury to consider the issues of liability and damages strictly on the merits and without regard to the coverage or non-coverage of the parties litigant.[1]

1. Similarly, I would not challenge the analytical sophistication of those courts which have given effect to loan agreements. It is quite probable that they too are unimpressed with any driving need for obviating the agreements of the parties involved.