**James HONEY et al., Plaintiffs,**

**v.**

**GEORGE HYMAN CONSTRUCTION CO. et al., Defendants.**

**Civ. A. No. 2990–69.**

United States District Court,
District of Columbia.

May 6, 1974.

---

444

John P. Arness, David Hensler, Hogan & Hartson, Washington, D. C., for defendant Schnabel Foundation.

James C. Gregg, Washington, D. C., for defendant George Hyman Const. Co.

David Webster, Williams, Connolly & Califano, Washington, D. C., for plaintiffs Georgetown University and James Honey.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This is an action for damages for breach of contract and negligence brought by James Honey, an underwriter at Lloyd's of London subscribing Policy No. CH 432604A, on his own behalf and on behalf of the other underwriters subscribing that policy, and by the President and Directors of Georgetown University against the George Hyman Construction Company and the Schnabel Foundation Company. The litigation arises out of the construction of a new medical center on the Georgetown University campus in the District of Columbia. In September, 1967, the George Hyman Construction Company (Hyman) entered into a contract with the University to construct a "Basic Science Building" on property owned by Georgetown. Construction of the building required shoring and underpinning work to prevent the lateral movement of soil and damage to adjacent structures. Pursuant to the terms of its contract with Georgetown, Hyman subcontracted the shoring and underpinning work to a "qualified speciality foundation subcontractor," the Schnabel Foundation Company (Schnabel). Soon after excavation at the construction site began, a nearby University building began to sustain physical damage allegedly as the result of improper shoring. During the period of time in question, the University's property was insured by a group of underwriters at Lloyd's of London. The insurers were given notice of the damage and, as a result of their investigation and evaluation, paid Georgetown the sum of $225,000. The University claims that in addition to the damage for which it has been reimbursed by the insurers, it has sustained non-insured losses in the amount of $30,000. Both plaintiffs sue to recover their respective losses and base their right to recovery on four theories: breach of contract, breach of contractual guarantees, res ipsa loquitur, and specific acts of negligence.

The matter is now before the court on the motions of Hyman and Schnabel for summary judgment. Both movants assert that plaintiff Honey lacks standing to sue on the claims of the Lloyd's underwriters who subscribed Policy No. CH 432604A. Schnabel also contends that it is entitled to summary judgment on plaintiffs' breach of contract and contractual guarantees count because as a subcontractor, it assumed no contractual duty to Georgetown University. In addition, Schnabel argues that the res ipsa loquitur count of plaintiffs' complaint should be dismissed because the doctrine is inapplicable under the circumstances of this case.

### I

Defendant Hyman challenges plaintiff Honey's standing to bring this action on two grounds. First, Hyman alleges that since Georgetown University was not the named insured on any policy of insurance issued by the Lloyd's underwriters, Honey has no interest in this litigation. This contention founders on both the facts and the law. The Lloyd's policy, appended as an exhibit to Honey's memorandum, indicates that the named insured is "The Corporation of Roman Catholic Clergymen of Maryland and/or Other Enterprises Under the Joint Management of the Maryland Province of the Society of Jesus." In an endorsement "attaching to and forming part of Policy No. CH 432604A" appears the following:

| "LOCATION | BLANKET SUM INSURED |
|---|---|
| . . . . | . . . . |
| 12. Georgetown University of Washington, D. C. | $61,938,500." |

Therefore, it is clear that Georgetown is an insured party under the policy. The

record is also clear that the Lloyd's underwriters paid to Georgetown University the sum of $225,000 under the terms of the policy. Having paid Georgetown, the underwriters at interest are *instanter* subrogated to the rights of the University without the necessity of a subrogation agreement. *See* Pearlman v. Reliance Insurance Co., 371 U.S. 132, 136 n. 12, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); City Stores Co. v. Lerner Shops, 133 U.S.App.D.C. 311, 410 F.2d 1010, 1011 (1969); London Guarantee & Accident Co. v. Enterprising Services, Inc., 192 A.2d 292 (D.C.App.1963). Consequently, Hyman's first contention must be rejected.

Hyman and Schnabel join in raising a second objection to plaintiff Honey's standing in this action, but before that objection can be understood a description of the Lloyd's of London organization is necessary. The Lloyd's group is not a legal entity; rather, there is a building in London known as Lloyd's where individual underwriters, grouped together in syndicates, accept insurance risks from a group of brokers called the Lloyd's brokers. Each underwriting syndicate may be composed of as many as 200 to 300 underwriting members who may be bankers, industrialists, farmers or in some other occupation far removed from the insurance business. The day-to-day affairs of each syndicate are conducted by an underwriter who has the authority to act for and bind the syndicate. When a Lloyd's broker has a piece of business that he wishes to have insured for a client, he contacts a syndicate and asks that syndicate to set a premium and agree to insure a portion of the risk. If an agreement is reached, that syndicate then becomes the lead underwriting syndicate. Thereafter, the broker, having secured a rate and a percentage with the lead underwriter, will ask other underwriters to accept a certain percentage of the risk. In the policy before the court, there are 55 participating syndicates, led by syndicate 92, the A. G. Wrightson syndicate of which plaintiff Honey is a member. When it is necessary for the underwriters of a policy to sue, the lead underwriter designates an individual as the one in whose name the suit is to be brought. In the instant case, that individual is James Honey. Plaintiffs' Exhibit 39, attached to plaintiffs' memorandum, purports to show the agreement of each participating syndicate to designate James Honey as the person who will sue on their behalf.

■■ On the basis of the contract of insurance and the Lloyd's structure, defendants argue that while Honey has standing to sue on his own claim, he has no standing to sue on behalf of the other underwriters. This argument is premised on the fact that the liability of each underwriter subscribing the Georgetown policy is several, not joint.[1] Therefore, the argument follows, Honey cannot sue on the claims of the remaining underwriters since he has no legal right to their interest and thus no cause of action. Defendants, however, misconceive the concept of standing. By focusing on and dividing the claim presented by Honey, defendants have engaged in an irrelevant inquiry for purposes of determining standing. The days of Tennessee Electric Power Co. v. TVA[2] and kindred cases which spoke of a plaintiff's "legal interest" as an element of standing are long since gone. Standing, as that concept has been refined by the Supreme Court, no longer demands that a plaintiff demonstrate an injury to a

---

1. Policy No. CH 432604A provides in this regard that "We, the Underwriters . . . bind Ourselves, each for his own part and not for another."

2. 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939); *see* Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 149–160, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring); Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L. Ed. 1108 (1940); Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938).

legally protected interest or a legal cause of action. *See, e. g.,* Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Association of Data Processing Service Organization, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (1970). The existence or non-existence of a "legal interest" upon which defendants focus is simply not relevant to and a matter quite distinct from the problem of standing. *See* Barlow v. Collins, *supra.* Since plaintiff Honey has demonstrated in his complaint sufficient injury in fact to give him a personal stake in the outcome of this litigation, it can be safely said that he has standing to bring this action without further inquiry into the merits or nature of his claim.

Beneath the surface of defendants' standing argument, the court finds, as do plaintiffs, an objection that plaintiff Honey is not the real party in interest in this litigation. By arguing that Honey lacks standing because he is a mere attorney in fact, defendants have indirectly challenged Honey's status as a plaintiff who possesses the substantive right being asserted. Plaintiffs respond to this attack by characterizing James Honey as "an assignee for purposes of suit" and therefore the real party in interest. Rule 17(a), Federal Rules of Civil Procedure, requires that "[e]very action shall be prosecuted in the name of the real party in interest." It is not necessary, however, that an action be brought in the name of the person who ultimately will benefit from any recovery, since the "modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Notes of Advisory Committee on Rules, Fed.R.Civ.P. 17(a), 1966 Amendment. The federal courts, in construing Rule 17(a), have recognized several classes of litigants who by virtue of their legal or equitable interests either satisfy the requirements of the rule or fall outside its scope. It is well settled that an assignee for purposes of collection is a real party in interest, even though he must account to his assignor for whatever is recovered in the action. *See, e. g.,* Titus v. Wallick, 306 U.S. 282, 289, 59 S.Ct. 557, 83 L.Ed. 653 (1939); Dixie Portland Flour Mills, Inc. v. Dixie Feed & Seed Co., 382 F.2d 830, 833 (6th Cir. 1967); Rosenblum v. Dingfelder, 111 F.2d 406, 407 (2d Cir. 1940); Birkins v. Seaboard Service, 96 F.Supp. 245, 248 (D.N.J. 1950). On the other hand, the courts have uniformly denied a mere attorney in fact the status of a real party in interest. *See, e. g.,* John L. Walker Co. v. National Underwriters Co., 3 F.2d 102 (7th Cir. 1924); Archie v. Shell Oil Co., 110 F.Supp. 542, 544 (E.D.La.1953); Birkins v. Seaboard Service, 96 F.Supp. 245, 248 (D.N.J.1950); Clark v. Chase Nat'l Bank, 45 F.Supp. 820, 822 (S.D.N.Y.1942). The practicality of such a distinction between these two classes is subject to question since "no undue hardship is imposed upon defendants in a suit by an attorney in fact unless there is a possibility that the suit would not bar a later action by the holder of the right. Since the power of attorney can easily be made part of the record in the action, the defendant need have no fear that such a later action might be maintained." 3A J. Moore, Federal Practice, ¶ 17.10, at 402–03 (2d ed. 1974).

The court finds, however, that it need not decide whether plaintiff Honey is an assignee for purposes of collection or an attorney in fact. Assuming, although not deciding, that Honey is not the real party in interest, defendants' motion for summary judgment must nevertheless be denied. Rule 17(a) provides in part that:

"No action shall be dismissed on the ground that it is not prosecuted in the

448

name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by . . . the real party in interest; and such ratification . . . shall have the same effect as if the action had been commenced in the name of the real party in interest."

This provision has been interpreted by the courts and a leading commentator to validate arrangements whereby the real party in interest authorizes the continuation of an action brought by another. *See* Urrutia Aviation Enterprises, Inc. v. B. B. Burson & Associates, Inc., 406 F.2d 769 (5th Cir. 1969); Pace v. General Electric Co., 55 F.R.D. 215, 219 (W.D.Pa.1972); Southern Nat'l Bank of Houston v. TRI Financial Corp., 317 F. Supp. 1173, 1186–1188 (S.D.Tex.1970); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1555, at 706 (1971). Therefore, ratification by the real parties in interest would permit this litigation to proceed. The court, however, will not require a meaningless act; plaintiffs' Exhibit 39 indicates that the lead underwriters of each syndicate participating in Policy No. CH 432604A have already consented to the commencement of this action by James Honey. No purpose would be served by requiring those individuals or the members of the syndicates they have the power to bind to execute a virtually identical document. The court will, therefore, accept plaintiffs' Exhibit 39 as a ratification of the commencement of this action by the real parties in interest and allow this litigation to proceed.

■ Defendants also challenge plaintiff Honey's presence in this action on jurisdictional grounds. They argue that as an individual underwriter Honey's interest in the outcome of this litigation, if successful, is only $90, an amount well below this court's jurisdictional minimum. In the complaint, plaintiff Honey demands $225,000; plaintiff Georgetown University asks for $30,000. For the purpose of determining jurisdiction, the court will accept defendants' argument that Honey's claim is limited to his individual interest in the Lloyd's policy.[3] The court notes at the outset that this matter is before it by virtue of its local District of Columbia jurisdiction.[4] That jurisdiction, no longer available to litigants, placed all local matters involving an amount in excess of $10,000 before this court, and in effect established the United States District Court for the District of Columbia as a superior local court. Sitting as a local tribunal, the court recognizes that factors such as judicial economy and the present age of this litigation are legitimate and compelling judicial considerations. Since the claims of both plaintiffs arise out of the same operative facts and since one plaintiff's claim is in excess of this court's $10,000 jurisdictional minimum, the requirements of the court's local jurisdiction have been satisfied.[5] To hold otherwise would be to delay resolution of plaintiff Honey's claim and shift an unnecessary burden with duplication of efforts to another branch of the same local court system, the District of Columbia Superior Court.

3. If the court were to consider the aggregated or individual interests of all the underwriters as controlling for the purpose of determining jurisdiction, the result of this determination would be the same.

4. See D.C.Code §§ 11–521, 11–961 (1967); D.C.Code § 11–501 (1973).

5. Some federal courts, most notably those of the Third Circuit, have upheld federal diversity jurisdiction in similar circumstances. *See* Nelson v. Keefer, 451 F.2d 289 (3d Cir. 1971); Langsam v. Minitz, 346 F.Supp. 1340 (E.D.Pa.1972). Because the court is exercising its local jurisdiction and because it finds other grounds upon which to justify its conclusion that the $10,000 amount in controversy has been satisfied, the court need not rely on these decisions.

The court, however, need not rest its holding only on local policy considerations. In Troy Bank v. G. A. Whitehead & Co.[6] in language subsequently endorsed in Snyder v. Harris[7] and again in Zahn v. International Paper Co.,[8] the Supreme Court announced the following rule as to the aggregation of claims when multiple plaintiffs sue in federal court:

"When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount."

222 U.S. at 40–41. Deceptively clear on its face,[9] this rule has caused a host of problems for those courts compelled to apply it and has resulted in conflicting, if not contradictory, decisions. This state of affairs has led one court to note that "[d]ifficult it is to draw a general rule or a rationale from the decisions other than the broad rules stated above. Language to support either conclusion in a case such as the present one can be found." Dixon v. Northwestern Nat'l Bank, 276 F.Supp. 96, 100 (D.Minn. 1967). Although there is authority to the contrary, the court finds that Honey, as insurer and partial subrogee, and Georgetown, as insured, share a " 'common and undivided interest,' though it may be separable as between themselves." Eagle Star Insurance Co. v.

Maltes, 313 F.2d 778, 780 (5th Cir. 1963). There can be no argument that when an insurer reimburses an insured for part of the loss suffered by the insured, the insurer is subrogated by operation of law to the rights of the insured to the extent it has paid compensation. The court finds that what is a single and undivided interest or right in the hands of the insured does not by force of subrogation become two distinct claims. *See* Continental Bus Systems, Inc. v. Rohwer, 172 F.Supp. 487 (D. Colo.1959); Farren v. Gas Service Co., 122 F.Supp. 536 (D.Kan.1954); *cf.* Lauf v. Nelson, 246 F.Supp. 307 (D.Mont. 1965). Rather, the insured and the insurer possess a single title or right in which they have a common and undivided interest. *Id.* Since plaintiffs Georgetown and Honey share a single title or right in excess of $10,000, the court has complete jurisdiction over this matter.

## II

In addition to the above contentions, defendant Schnabel moves for summary judgment on the merits of plaintiffs' cause. Count I of the complaint alleges a breach of contract and breach of contractual guarantees by both defendants. Plaintiffs justify this claim against Schnabel, a subcontractor, on the theory that plaintiff Georgetown University is a third-party beneficiary of the subcontract between Hyman and Schnabel. As a third-party beneficiary, Georgetown (and its subrogee Honey) would be entitled to sue Schnabel for breach of the subcontract. *See* Aetna Casualty &

6. 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81 (1911).

7. 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

8. 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (U.S. Dec. 17, 1973).

9. Indeed, the Supreme Court in *Snyder* stated that the "lower courts have developed largely workable standards for determining when claims are joint and common, and therefore entitled to be aggregated, and when they are separate and distinct and therefore not aggregable." 394 U.S. at 341. Professor Wright has commented with consternation that "[i]t would have been helpful if the court had indicated what these standards are or where they are to be found." C. Wright, Law of Federal Courts § 336, at 123 (2d ed. 1970).

Surety Co. v. Kemp Smith Co., 208 A.2d 737 (D.C.App.1965).

■ In order to qualify as a third-party beneficiary, an individual must have been intended by the contracting parties at the time of contracting to be a beneficiary of their contract. An unintended or incidental beneficiary has no right as a stranger to the contract to enforce its provisions or collect damages for its breach. The fact that an individual is not specifically named in a contract, however, does not necessarily disqualify that individual as a third-party beneficiary. Moran v. Audette, 217 A. 2d 653 (D.C.App.1966). Other evidence of the contracting parties' intent may be sufficient, but such evidence does not appear here.

■ In the instant case, Georgetown relies upon several provisions of the building specifications which were included by reference in the subcontract as proof of the parties' intent. This reliance is clearly misplaced. As originally proposed by Hyman, that portion of the subcontract which adopted the specifications provided that the:

> "terms and provisions *of the contract between the Contractor and the Owner,* the plans, specifications, general conditions (PHS–143), modifications to the standard form, supplementary general conditions, labor standards, and all other parts thereof are incorporated herein by reference and made a part hereof, the Subcontractor hereby agreeing to be bound thereby insofar as they affect his portion of the work."

Before executing the agreement, Schnabel's president specifically deleted *"of the contract between the Contractor and the Owner."* While this act in itself is somewhat ambiguous, it evinces at the least an intent not to become entangled by the terms of Hyman's contract with Georgetown. The specifications [10] which plaintiffs cite are more an indication of the standard of performance to which Schnabel agreed to be bound than evidence that the parties intended Georgetown to be more than an incidental beneficiary of their contract. Any doubt as to the purpose of these specifications is dispelled by one of the general conditions also adopted by reference in the subcontract. That condition, 21(a), provides that "[n]othing contained in the specifications or drawings shall be construed as creating any contractual relationship between any subcontractor [Schnabel] and the Owner [Georgetown]." This provision clearly indicates that Schnabel intended to avoid any contractual obligation to Georgetown. It would be unreasonable to assume that having explicitly disavowed undertaking any contractual relationship with the University, Schnabel would intend Georgetown to be the beneficiary of its subcontract with Hyman and thereby be entitled to sue for its breach. Therefore, defendant Schnabel's motion for summary judgment on Count I of plaintiffs' complaint must be granted.

The two remaining counts of the complaint allege negligence on the part of Schnabel and Hyman in the installation and maintenance of the sheeting, shoring and underpinning at the construction site. Count II, the only remaining count which is the subject of a motion, alleges negligence only on the part of Schnabel and "the Plaintiffs . . . rely upon and adopt in support of this Count of the Complaint, the theory of *res ipsa loquitur."* Defendant Schnabel

---

10. Plaintiffs quote two specifications in their memorandum:

"All sheeting, shoring, bracing and underpinning work shall be properly designed and maintained to safely support all temporary and permanent loads at all times for the duration of the contract;"

"The subcontractor shall be responsible for the safe and complete execution of the work without damage to persons and adjacent property."

Plaintiffs' Opposition to Motion for Summary Judgment, at 7.

argues that it is entitled to summary judgment on this count because the doctrine of res ipsa loquitur is not applicable to the facts which allegedly give rise to plaintiffs' claim. Plaintiffs respond that it would be premature to strike this count from the case before any evidence has been presented.

 It is well settled in this jurisdiction that res ipsa loquitur is a rule of evidence and not one of pleading or substantive law. *See* Powers v. Coates, 203 A.2d 425 (D.C.App.1964). Nevertheless, summary judgment is an appropriate method to dispose of a res ipsa loquitur claim if the moving party clearly establishes that there is no genuine dispute as to any material fact controlling the application of the doctrine. *See* Ramsouer v. Midland Valley R. Co., 135 F.2d 101 (8th Cir. 1943); Sanders v. Nehi Bottling Co., 30 F.Supp. 332 (N. D.Tex.1939). In the instant case, defendant Schnabel has failed to make such a showing. The statement of material facts not in dispute submitted by Schnabel and the entire record herein do not as a matter of law preclude the application of the doctrine in this case. In support of its position, defendant points to the fact that plaintiffs have alleged specific acts of negligence, none of which was under the sole control of Schnabel, in addition to res ipsa loquitur. These allegations of specific negligence are not fatal to plaintiffs' cause, however, since a plaintiff may always plead inconsistent causes of action or in the alternative, and in this jurisdiction may rely on both res ipsa loquitur and proof of specific acts of negligence. *See* Powers v. Coates, *supra;* Levy v. D. C. Transit System, Inc., 174 A.2d 731 (D. C.App.1961). Therefore, defendant Schnabel's motion for summary judgment on Count II of the complaint must be denied. Since this case will now proceed to a trial on the merits, defendant may renew its motion at trial.

In summary, the court finds that plaintiff Honey has standing to bring this action and that, if he is not the real party in interest, the commencement of this litigation by him has been ratified by the real parties in interest. The court also finds that it has complete jurisdiction over this matter. Therefore, plaintiff Honey is entitled to sue for the recovery of the entire sum paid to Georgetown University by the underwriters at Lloyd's. Plaintiffs, however, may not recover from defendant Schnabel for breach of contract or breach of any contractual guarantees, since plaintiff Georgetown was not an intended third-party beneficiary of the subcontract between Hyman and Schnabel.