F. L. CRANE COMPANY and Tri-State Lumber Company, Inc., Plaintiffs,

v.

CESSNA AIRCRAFT COMPANY, Defendant.

No. EC 76-8-S.

United States District Court, N. D. Mississippi, E. D.

April 5, 1977.

L. F. Sams, Jr., Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, Miss., for plaintiffs.

Thomas C. Gerity, Watkins & Eager, Jackson, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The action sub judice has been submitted to the court for decision on defendant's motion to require the prosecution of the action in the name of the real party in interest, pursuant to Fed.R.Civ.P. 17(a). Rule 17(a) provides in pertinent part that "[e]very action shall be prosecuted in the name of the real party in interest."

The parties have presented excellent memoranda and the court has given careful study to the issue involved. For the reasons hereinafter stated, the court finds the motion is well taken and should be sustained.

Plaintiffs, on the date of the casualty hereinafter mentioned, i. e., February 15, 1972,[1] were the owners of a Cessna 310-K aircraft. The aircraft was destroyed when it crashed on takeoff from the Tupelo Airport, Lee County, Mississippi.

Plaintiffs sued defendant, Cessna Aircraft Company (Cessna) for damages resulting from the destruction of the aircraft in the sum of $30,907.90. The complaint is based upon plaintiffs' allegations that Cessna manufactured and placed in the stream of commerce the aircraft for sale to plaintiffs in a dangerous and defective condition. Plaintiffs charge that Cessna is liable to them as owners of the aircraft due to the manufacture of the aircraft in an unreasonably defective condition, negligence in design, and for a negligent failure to warn of known defects prior to the date of the crash.

The record reflects that at the time of the loss, plaintiffs had a contract of hull insurance on the aircraft with the Insurance Company of the State of Pennsylvania (insurer) and that the insurance was in force and effect at the time. The insurer was unconditionally obligated to pay plaintiffs for the loss. In accordance with its contract, the insurer paid plaintiff the sum of $37,250.00. In making settlement with plaintiffs, the insurer received from plaintiffs an executed "Loan Receipt" in the words and figures as follows:

<u>LOAN RECEIPT</u>

$37,250.00

Received from INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA Thirty Seven Thousand, Two Hundred Fifty and 0/100 Dollars, as a loan and repayable only to the extent of any net recovery we may make from any person or persons, corporation or corporations, on account of loss by accident to our property on or about February 15, 1971, or from any insurance effected by such persons or persons, corporation or corporations.

As security from such repayment, we hereby pledge to said INSURANCE CO. OF THE STATE OF PENN. the said recovery and deliver to it all documents necessary to show our interest in said property, and we agree to enter and prosecute suit against such person or persons, corporation or corporations on account of said claim for said loss, with all due diligence, at the expense and under the exclusive direction and control of said INSURANCE CO. OF THE STATE OF PENN.

Tri-State Lumber Company<br>and F. L. Crane Company

[1] The "Loan Receipt" executed by plaintiffs refers to the date as February 15, 1971. The complaint and other pleadings give the date as February 15, 1972. Since the date is not material to the issue before the court, no effort has been made to determine the correct date.

By:_____TITLE_____

_____, 19___

(Signatures omitted)

The insurer sold the salvage to White Industries, Inc., for the sum of $6,623.60 and reduced its loss by that amount.

The Supreme Court construed Rule 17(a) in *United States v. Aetna Cas. & Surety Co.,* 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949). The court there said "[i]f the subrogee has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name." Id. at 380–81, 70 S.Ct. at 215.

The insurer had an absolute contractual obligation to indemnify plaintiffs for the loss occasioned by the destruction of the aircraft. When the loss was paid, the insurer became the subrogee to plaintiffs' right of action, if any they had, against Cessna for the defective product. Instead of securing a release and subrogation agreement from plaintiffs, the insurer, however, elected to take the "Loan Receipt" in question.

Plaintiffs argue that the procedure adopted by their insurer is expressly authorized by the Supreme Court and the United States Court of Appeals for the Fifth Circuit.

Plaintiffs rely principally upon three cases, *Luckenbach v. McCahan Sugar Ref. Co.,* 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170 (1918); *Sanders v. Liberty Mutual Ins. Co.,* 354 F.2d 777 (5th Cir. 1965); *Ketona Chemical Corporation v. Globe Indemnity Co.,* 404 F.2d 181 (5th Cir. 1968). The cases cited do not, in the opinion of the court, control the action sub judice.

In *Luckenbach, supra,* the insurer of the cargo involved in the action could not have been obliged to pay for the loss until the condition of its liability, i. e., non-liability of the carrier, had been established. In other words, the liability of the insurer was not absolute, as is the case here, but was contingent on the non-liability of the carrier. The court in discussing such a situation approved the "Loan Receipt" procedure and said:

The insurer could not have been obliged to pay until the condition of their liability, i. e., non-liability of the carrier, had been established. The shipper could not have been obliged to surrender to the insurers the conduct of the litigation against the carrier until the insurers had paid. In consideration of securing them the right to conduct the litigation, the insurers made the advances. It is creditable to the ingenuity of business men that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice.

248 U.S. at 149, 39 S.Ct. at 55, 63 L.Ed. at 176.

The liability of the insurance carrier in each of the Fifth Circuit cases, *supra,* was not absolute, but contingent, as in *Luckenbach.* Under these circumstances the court approved the "Loan Receipt" procedure.

The United States Court of Appeals for the District of Columbia in *City Stores Company v. Lerner Shops of District of Columbia, Inc.,* 133 U.S.App.D.C. 311, 410 F.2d 1010 (1969), discusses the problem now before the court in an excellent and well-reasoned opinion written by Senior Circuit Judge Wilbur K. Miller. The following is an excerpt from that opinion:

In the *Luckenbach* situation, the insurer's liability was not absolute; it was contingent only, and the resolution of the contingency might have required lengthy litigation. In those circumstances, the insurer lent to the insured the amount of its claim, payable only from proceeds which might be recovered from another whose liability, if any, preceded that of the lending insurer. In other words, in that case there was a valid reason for the use of the loan receipt; and it was the prompt payment to the insured, made possible by the lending arrangement, which caused Mr. Justice Brandeis to compliment the insurance industry on its altruism. Here the insurer's liability was not contingent, and the only reason apparent to us for the use of the loan receipts was to avoid the effect of subrogation; in fact, the appellees offer no

other explanation, and in effect admit that such was the motive of the insurers. 410 F.2d at 1013 (footnote omitted)

The court has determined that Judge Miller's reasoning is sound and is applicable to the action sub judice.

The motion will be sustained and an appropriate order entered by the court.