## DIXON v MILLHORN

Ohio Appeals, 5th Dist, Stark Co

Decided Jan 30, 1936

Hart & McHenry, Canton, for plaintiff in error.

Curtis & Creighton, Canton, for defendant in error.

### OPINION

By SHERICK, J.

On or about 8:30 A. M. of March 27, 1934, Evelyn M. Millhorn delivered to the plaintiff in error, David Dixon, a suit of clothes to be cleaned and pressed. About 9 P. M. of the same day, Mrs. Millhorn called upon Dixon and advised him that a diamond pin had been left in the cuff of the trousers. At that time the suit had already been delivered to another for cleaning, and the pin was not found at the cleaners. Although it is affirmed and denied that a diamond pin was in the suit, the proof establishes that some kind of a pin with a safety catch attachment was in the cuff which Dixon and his son were unable to remove, and which they delivered to the cleaner. The plaintiff sued to recover the value of the pin upon the theory of a bailment and that the bailee was guilty of gross negligence, with respect thereto, which caused the loss of the pin. The defendant denied the existence of a contract of bailment, and denied that he was negligent. The jury returned a verdict for $75 in the plaintiff's favor. From the judgment entered thereon Dixon prosecutes error.

It is said that the judgment is contrary to law and against the manifest weight of the evidence, in that a bailment was not shown to have existed between the parties with respect to the pin; and that if such did exist it was a gratuitous one and no proof was made establishing that he, Dixon, was grossly negligent in caring for it.

The plaintiff in error argues that a bailment relationship may be created only by virtue of an express or implied contract, and that one may not have a bailee's responsibility thrust upon him without his knowledge and consent. In support of this theory he relies upon the cases of Copelin v Berlin Dye Works & Laundry Co., 168 Cal. 715, 144 P. 961, L.R.A. 1915C 712, and Berry v Cadillac Storage Co., 259 Mich. 104, 242 NW 855. The California case is almost, but not quite a parallel case. Therein one delivered a suit to a corporation, whose business it was to recondition clothes. A pair of diamond ear rings had been left in a pocket. This jewelry was not returned and the customer sued. It was held that a bailment did not exist, and that the corporation could not be held for the act of an employee done outside the course of his employment. The point of difference between this case and the present controversy is found in the remark contained therein at page 719, to the following effect:

"But it was not shown that the defendant ever personally or by any of its officers knew of the presence of the valuable in Mr. Copelin's clothing."

The Michigan case presents an attempt to charge a packing and shipping company with liabilitiy as a bailee for loss of a small box of jewelry. The contract was to pack and ship household goods. The court held that household goods include those things usually included and considered as such, and not a small box of jewels. It was said at page 108 that a bailment for hire existed, and that ordinary care was required, that is, such care as is ordinarily used in handling household goods, but that the "defendant

did not knowingly become a bailee of this box of jewelry."

As previously indicated the evidence in this action preponderates in favor of establishing the fact that Dixon knew that the pin was in the cuff of the trousers. If he was advised that a valuable article had inadvertently come into his possession with the clothes bailed to him, he thereby sustained a duty to use some degree of care to preserve such article for his customer. He might not convert it to his own use; nor was he justified in casually placing it in the hands of another. It is our opinion that Bertig v Norman, 101 Ark. 75, 141 SW 201, although dissimilar in that it applies a principle to unlike facts, correctly enunciates the rule applicable in respect to the relationship existing between parties, where the property of one inadvertently comes to the possession of another by virtue of and incident to an express contract of bailment of other property. It is therein stated at page 81:

"The relation of bailment may exist from the fact that the property has come into the possession of a person, even though accidently or by mistake; but the responsibilities and duties growing therefrom can only exist and continue so long as the party to be charged has and knows, or has notice, that he has possession and custody thereof."

The line of demarcation, as we see it, lies in the fact of possession by the bailee with knowledge. Being a ▇▇▇▇▇ bailee of property for hire, it should and does naturally follow that he becomes a gratuitous bailee by virtue of an implied contract to care for and preserve such other property contained within and accidently acquired therewith, which belongs to his bailor.

The English case of Cartwright v Green, 2 Leach, 952, 8 Ves. Jr. 405, 32 Eng. Reports Rep. 412, is of interest. There a bureau was delivered to one for repair, who discovered money hidden in a secret drawer, and this he converted to his own use. It was held that the delivery of the bureau was a bailment, and that the conversion was a felony, for the recipient was bound in law to return the bureau. If he was bound to return it, he then had to use some degree of care to preserve it.

It is generally held that a gratuitous bailee is obligated merely to exercise slight care, or, conversely stated, he is obligated only for gross negligence or positive neglect

to exercise any or very slight care. It was a question for the jury in the present instance to answer that question. We see no error in the respect claimed.

It is next contended that error intervened because of the admission of testimony with respect to the value of the diamond pin. It is said that to permit a jeweler to testify as to the value of a diamond without the witness seeing it is to place a fictitious value upon it, which, in turn, can only lead the jury to speculate as to its probable worth. The witness says that an ordinary, commercially perfect blue white stone of a certain weight is ordinarily worth so much money. It does not contemplate perfection. Diamonds have no fixed value, and we anticipate that no two persons, qualified to estimate value, would honestly arrive at the same conclusion. Most diamonds contain flaws and imperfections, which are reflected in their value, as evidenced by the opinion of the expert who estimates them. The objection to this evidence goes no further than to its credibility and the weight to be attached thereto. It is said that this evidence is the only evidence of value in this record. We do not so find. On page 13 of the record we find it evidenced by the plaintiff that the stone's value was $150. This testimony was not objected to.

As a last ground of error it is urged that the trial court erred in defining the term "gross negligence." We do not so find. It is our notion that the charge correctly stated the law and did not confuse the jury.

Finding no error in the respects claimed, the judgment is affirmed.

Judgment affirmed.

LEMERT, PJ, and MOTGOMERY, J, concur.