MALONEY ET AL., APPELLEES, *v.* GENERAL TIRE SALES, INC., APPELLANT.

(No. 72AP-313—Decided February 20, 1973.)

*Mr. Howard J. Gallant* and *Mr. James E. Dodd,* for appellees.

*Messrs. Earl & Warburton,* for appellant.

HOLMES, J. This matter involves an appeal of a judgment of the Municipal Court of Franklin County in favor of the plaintiff Buckeye Union Insurance Company in the sum of $2,444, plus costs, against defendant, General Tire Sales, Inc.

Such action for damages was brought on the basis of subrogation rights acquired by the plaintiff insurance com-

pany from its insured Donald J. Maloney, the latter having been compensated for the loss of his automobile which was stolen while parked on the premises of the defendant.

The facts in brief are that on the morning of January 4, 1971, plaintiff Donald J. Maloney, an appellee herein, while traveling to work, had a flat tire on his automobile. Leaving the car parked where the flat tire occurred, Mr. Maloney walked to the defendant's place of business where he was acquainted with the general manager, Mr. Richard Hollingshead. Mr. Maloney requested the defendant organization, the appellant, to tow his automobile to defendant's place of business for the purpose of putting on new tires. The defendant agreed to replace the tires and it was understood that Mr. Maloney would pick up his car sometime later in the afternoon after he was finished working.

There was testimony by Mr. Hollingshead during the trial that Mr. Maloney had made a call to Mr. Hollingshead sometime in the afternoon of January 4th, inquiring about the time the business closed. It was testified to by Mr. Hollingshead that Mr. Maloney stated that he would be late and that he, Mr. Maloney, wondered whether it would be possible to leave the ignition key in the car in order that such automobile would be available to him.

Mr. Hollingshead further testifiied that he had thereupon directed his service manager to put such key into the ignition at closing time. Mr. Hollingshead further testified that he did not actually see the service manager put the key in the ignition, but he assumed that such was done.

Mr. Hollingshead also testified that it was the policy of General Tire Sales, Inc., not to leave keys in the cars and that they had a key rack at the service manager's desk upon which all customers' keys were kept.

Mr. Hollingshead further testified that the company had been in business for some 25 years and to his knowledge there had never been a car stolen from such company.

Mr. Maloney testified that he had called General Tire Sales, Inc., sometime about 5:30, asking whether they were still open. He testified that upon receiving an affirmative reply, he indicated that he was coming right over to obtain

his automobile. Mr. Maloney further testified that on the date in question he definitely did not tell any agent of General Tire Sales, Inc., to leave his keys in his car.

Again, upon the other side of the question, Mr. Hollingshead testified that the automobile in question was parked behind the main building in a lot provided for customers' cars, and that the ignition key to such car was in fact hanging on the key rack located in the service manager's office, and that such key remained in such position until the defendant company received the call from Mr. Maloney to place the key in the ignition for his own convenience.

Thirty-five days after the loss of the automobile, plaintiff Buckeye Union Insurance Company, pursuant to its policy of insurance with plaintiff Donald Maloney, paid the latter $2,945, being a "total loss" settlement for the automobile, together with the policy rate for the loss of use during the time the car was gone.

Subsequent thereto, the car was recovered in Cleveland, Ohio, and examined by Mr. Lawrence Rush, the casualty insurance adjuster for plaintiff Buckeye Union. Following an appraisal of the condition of such car, it was sold for salvage and Buckeye received a net figure, after towing and storage charges were deducted, of $501.

Mr. Rush testified that it was not the practice of the insurance company to obtain estimates of costs of repair or to determine whether such automobiles are repairable, but that under such circumstances as found in this case it was the practice of the company to dispose of such automobiles as salvage. He further testified that it was not the practice of the company to sell automobiles at retail in that the company had no vendor's license to sell such automobiles, and that the only sales of such cars would be to a salvage buyer.

The trial court, upon the foregoing basic facts, found for the plaintiff insurance company and against the defendant, General Tire Sales, Inc. The defendant appeals, setting forth the following five assignments of error:

"1. Court erred in finding that the plaintiff sustained his burden of proof on the issue of negligence.

"2. Court erred in sustaining the objection of the de-

fendant [sic] to plaintiff's [sic] evidence of business practices.

"3. Court erred in finding that the defendant had the burden of proving that it was not negligent.

"4. Court erred in determining the amount of damages.

"5. The decision of the Court was contrary to the manifest weight of the evidence and the law."

There is no question here that Mr. Maloney's automobile, as left with the defendant General Tire Company, constituted bailed property. Under Ohio law, as it generally is elsewhere, a bailee is obligated to exercise ordinary care in the safekeeping of the bailor's property. *Hotels Statler Co., Inc.,* v. *Safier* (1921), 103 Ohio St. 638.

Pursuant to the law of bailment, the bailee promises to return the property undamaged upon the termination of the bailment. The bailor can sue the bailee for the breach of either a duty of redelivery, or a duty to exercise ordinary care for its safekeeping. Such was recognized in the case of *Agricultural Ins. Co.* v. *Constantine* (1944), 144 Ohio St. 275.

The manner in which a bailor establishes a prima facie case against a bailee, where there has been a breach of the bailment contract, is set forth in the first paragraph of the syllabus in *David* v. *Lose* (1966), 7 Ohio St. 2d 97, as follows:

"1. In order to establish a prima facie case against a bailee in an action sounding in contract, a bailor need prove only (1) the contract of bailment, (2) delivery of the bailed property to the bailee and (3) failure of the bailee to redeliver the bailed property undamaged at the termination of the bailment."

In an action for the breach of a bailment contract, the proof required to establish a case is well illustrated in paragraph four of the syllabus of *Agricultural Ins. Co.* v. *Constantine, supra,* as follows:

"4. In an action by a bailor against a bailee based upon a breach of the contract of bailment, where the bailor proves delivery of the bailed property and the failure of the bailee to redeliver upon legal demand therefor, a *prima facie* case

of want of due care is thereby established and the burden of going forward with the evidence shifts to the bailee to explain his failure to redeliver.''

The law as set forth in the above paragraph was again followed by the Supreme Court in *David* v. *Lose, supra,* in paragraph two of the syllabus therein.

The evidentiary law applicable to breaches of bailment contracts was set forth in the case of *Aetna Cas. & Sur. Co.* v. *Woody Sander Ford* (1969), 21 Ohio App. 2d 62, wherein we find the following paragraphs of the syllabus:

''2. An inference of negligence by a bailee may be drawn from proof by the bailor that bailed property is not returned to the bailor by the bailee.

''3. A bailment is created when the owner of a damaged automobile delivers it to an automobile dealer for repair.

''4. Where, in an action to recover the value of an automobile delivered to an automobile dealer for repair and not returned to the owner, the evidence shows that the dealer was unable to produce such automobile after its repair because it was stolen, a prima facie case against such dealer is established, and the burden of going forward with the evidence is shifted to the dealer.''

It would appear, following a review of such cases, that the burden of proof does not shift from the bailor to the bailee after a prima facie case has been established by the bailor, but merely the burden of going forward with the evidence.

As set forth in the *Aetna* case, *supra*, an inference of negligence by a bailee may be drawn from evidence by the bailor that bailed property has not been returned to the bailor by the bailee. Therefore, in the case before this court, an inference of negligence by defendant may be drawn from the proof of the bailor Mr. Maloney that the bailed property, the automobile, was not returned by the General Tire Company to Mr. Maloney. A prima facie case was thus established as against this defendant, and the burden of going forward with the evidence was therefore shifted to the defendant General Tire Company.

The record in this matter shows that General Tire

Company went forward with its evidence and showed that such automobile was stolen from its lot behind the building. To further rebut the inference of negligence that may be drawn from the fact that the bailed property was not returned to the bailor, the bailee here presented evidence that the bailor had made a phone call to the bailee and asked that the key be left in the ignition in order that he might pick up his car after the place of business had closed.

To counter such evidence, the bailor then testified that there was no such statement on his part that the key be left in the ignition, but that such had been done without his permission and the car left on an unattended lot. All of this evidenced the negligence of the bailee.

The law applicable to such a fact situation in the posture of this case, was set forth in the sixth paragraph of the syllabus of *Agricultural Ins. Co.* v. *Constantine, supra,* as follows:

"6. In an action by a bailor for damage by reason of the bailee's failure to redeliver the bailed property, the burden of proof is upon the bailor to prove that the bailee was guilty of negligence or want of due care. In determining that question, the presumption of negligence or want of due care arising from bailee's failure to redeliver, his explanation of the circumstances surrounding such failure and any evidence offered to rebut such explanation, all should be considered and weighed by the trier of the facts. To entitle the bailor to prevail the preponderance of all the evidence must support the conclusion that the bailee was guilty of negligence or want of due care."

A trial court, in determining the question of negligence or want of due care arising from the bailee's failure to redeliver, may look at the bailee's explanation of the circumstances surrounding such failure, and any evidence offered by the bailor to rebut such explanation.

In the particular case before us, the trial court had the statements of both the bailor, and the bailee as to whether any authority had been given as to the placement of the key in the ignition. The trial court undoubtedly preferred to believe the bailor to the effect that no such request to leave the key in the ignition had been made to the defend-

ant. We believe it to be within the province of the trial court to weigh the evidence as presented, and to believe or disbelieve the witnesses in the testimony as presented. We believe, and so hold, that no prejudicial error has been committed in this regard. Assignment of error number one is overruled.

Although stated otherwise in his brief, we believe the defendant is arguing, in its assignment of error number two, that the court erred in sustaining the objection of the plaintiff to the defendant's evidence of business practices. Such assignment must also be overruled, because the plaintiff had not established the appropriate foundation for such question. The background or experience in the trade or business of the witness, Mr. Hollingshead, had not been established upon the record, therefore, the trial court could well exercise his discretion and exclude such testimony.

As to assignment number three, the defendant quite correctly points out that the court erred in finding that the defendant had the burden of proving that it was not negligent. However, as set forth within the discussion of the first assignment of error, even though the bailee merely had the burden of going forward with an explanation of why he did not deliver the plaintiff's automobile, rather than the burden of proof on the question of negligence, the trial court could have considered all of the evidence as previously stated, and have reasonably concluded in favor of the plaintiff on the issue of negligence.

Relating to assignment of error number four, to the effect that the trial court erred in determining the amount of damages, we must agree with the appellant that the improper evidentiary method was used for the establishment of such damages. As stated in 6A Ohio Jurisprudence 2d 583, Automobiles, at Section 467, "* * * The rules controlling the recovery of compensatory damages to property generally apply to cases involving damage to vehicles. * * *"

Such article further informs us that damages to a motor vehicle as a result of a collision may be proved by showing its market value immediately before the collision and its market value immediately thereafter and, under the general rule, the owner may recover the difference between

these values, citing *Falter* v. *Toledo* (1959), 169 Ohio St. 238.

Also, we find it to be the pronounced law that in cases where the vehicle cannot be repaired, the general rule is that the measure of damages is the difference between the market value of the automobile before injury and the salvage value of the wreckage. See *Glass* v. *Miller* (1940), 44 Ohio Law Abs. 278.

In discussing the measure of damages where the action concerns bailed property, it is stated in 8 American Jurisprudence 2d 1220, Bailments, Section 333: "As in any other action for the conversion, or for the loss or destruction, of property due to a wrongful act, when the action concerns the subject matter of a bailment, the value of the property for purposes of ascertainment of the damages is ordinarily determined by reference to its fair market value if it has such a value. * * *"

The general rule which measures the market value of property which is lost, destroyed, or stolen, due to the negligence of the bailee, and where such property has not been recovered, must be in reference to the value at the time of such loss, destruction, or theft.

Where, however, the property is recovered in a damaged condition after being lost or stolen, the general rule as to the measure of damage should be applied. Such rule is stated in 8 American Jurisprudence 2d 1221, Bailments, Section 334, as follows:

"Where, through negligence of the bailee, bailed property in his hands is injured, partially destroyed, or impaired in value, the bailor is entitled to recover such a sum as will reasonably compensate him for the injury sustained, and the damages recoverable are governed, speaking broadly, by the general rule that the measure of damages is the difference between the value of the property immediately before, and its value immediately after, it was damaged. * * *"

The same general principles relating to the measure and elements of damages are applied in bailment cases. See 7 Ohio Jurisprudence 2d 156, Bailments, Section 49.

In the matter before this court, there was a showing

that the automobile of the plaintiff was recovered, and that such automobile had sustained certain damages. There was further testimony that the automobile was sold at salvage rather than repaired, that the reason it was sold for salvage was that it was the practice of the insurance company to do so, and that the insurance company had no used car dealer's license; therefore, a sale could only be made to a salvage company.

There was, conversely, no evidence that this automobile could not feasibly have been repaired, nor was there any testimony as to a projected amount of such repairs. Further, there was no testimony as to the fair market value of the automobile prior to and after such theft. As previously stated, there was only the testimony as to the amount received for the sale of such automobile as salvage.

We feel that the evidence as presented in the trial of this matter was insufficient to establish the measure of damage as sustained by the plaintiff Maloney, and thence the liability of this defendant bailee.

The manner of determining a loss for the purposes of paying an insured and obtaining a subrogation right may well create an inequitable result, where the insurer has not made reasonable efforts to minimize its damage.

The following is stated in 16 Ohio Jurisprudence 2d 36, Damages, Section 17:

"It is a fundamental principle of damages that one injured in his person or property by a wrongful act or wrongful omission to act, whether as a result of a tort or a breach of contract, must use reasonable care to avoid loss or to minimize the damages resulting. * * *"

The plaintiff insurance company was bound under the terms of the policy to pay its insured on the basis of a total loss if the insured's automobile would not be returned to him within thirty days after being reported stolen.

The fact that such amount has been paid to the insured does not establish the measure of damage as against this bailee. Where the bailed item is later found, the measure of damages should be the difference in the fair mar-

ket value at the time of the taking and the fair market value after the recovery.

The method of establishing the measure of damages as utilized by the trial court is not an equitable resultant, nor is it contemplated by the law of damages in Ohio. The claim of error in this regard is therefore sustained.

Although we feel that assignment of error number five is covered by our comments relating to other assignments of error herein, suffice it to say that the decision of the court as it relates to the matter of damages was contrary to the manifest weight of the evidence and the law.

We therefore hold that the decision of the trial court was contrary to law, as it relates to the measure of damages, and we reverse the trial court in this regard and remand this matter to the Municipal Court of Franklin County for further proceedings according to law, and an appropriate determination of the amount of the damages due this plaintiff because of the negligence of the defendant.

*Judgment reversed and cause remanded.*

TROOP, P. J., and STRAUSBAUGH, J., concur.