EXECUTIVE JET AVIATION, INC., et al., Appellants,

v.

UNITED STATES of America, Appellee.

No. 74–1243.

United States Court of Appeals, Sixth Circuit.

Dec. 12, 1974.

Phillip D. Bostwick, Shaw, Pittman, Potts & Trowbridge, James Thomas Lenhart, Washington, D. C., Ron Tonidandel, Spieth, Bell, McCurdy & Newell, Phillip J. Campanella, Cleveland, Ohio, for appellants.

Fredrick M. Coleman, U. S. Atty., Cleveland, Ohio, Philip Silverman, Chief, Aviation Unit, Dept. of Justice, Leonard Schaitman, James C. Hair, Jr., Washington, D. C., Carla A. Hills, Asst. Atty. Gen., New York City, Karen K. Siegel, Washington, D. C., for appellee.

Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.

PHILLIPS, Chief Judge.

Executive Jet Aviation, Inc., and Executive Jet Sales, Inc., brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671–2680. The District Court dismissed the complaint, holding that Executive Jet is not the real party in interest and that lack of jurisdiction prevents joinder of Executive Jet's insurers, who are the real parties in interest. Executive Jet appeals from this dismissal. For the reasons stated below, we reverse and remand for further proceedings.

On July 28, 1968, one of Executive Jet's aircraft crashed on takeoff from the Cleveland, Ohio, airport after its engines had ingested a large number of seagulls that had been roosting on the runway.[1] The plane was covered by a $1,300,000 policy of aircraft hull insurance issued by a group of British insurance companies. On October 17, 1968, Executive Jet received $1,300,000 from the insurers pursuant to a typical loan receipt agreement, under which Executive Jet was obligated to make repayment only out of any net recovery it might obtain from those liable for the crash. In addition, the agreement required that Executive Jet stand ready to institute suit in its own name for the purpose of effecting such a recovery. The insurers, however, were to bear the expense and to assume direction and control of any such litigation.

By letter dated May 6, 1969, Executive Jet submitted to the Federal Aviation Administration a written claim in the

---

1. This same accident was involved in Executive Jet Aviation v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), aff'g 448 F.2d 151 (6th Cir. 1971).

amount of $1,763,643.64.[2] The letter made no reference to the insurers or to the loan receipt agreement.

On May 12, 1969, Executive Jet filed a complaint against the United States in the action out of which this appeal arises, alleging negligence on the part of the FAA air traffic controllers in not warning of the presence of seagulls on the runway and praying for $1,763,643.64 in damages. In an answer filed July 24, 1969, the Government raised several issues, including the defense that Executive Jet was not the real party in interest.

In an unreported opinion rendered on November 2, 1973, the District Court looked to the law of Ohio as stated in Cleveland Paint & Color Co. v. Bauer Manufacturing Co., 155 Ohio St. 17, 97 N.E.2d 545 (1951), and concluded that the loan receipt arrangement was a mere fiction that would not avoid subrogation. Thus the insurers, rather than Executive Jet, were held to be the real parties in interest. The court noted in passing that even if federal law were to control the effect of the loan receipt, the same result would be achieved under what the court considered the better federal rule announced in City Stores Co. v. Lerner Shops, Inc., 133 U.S.App.D.C. 311, 410 F.2d 1010 (1969). Further, the District Court held that because the insurers had not filed an administrative claim within two years of the accident as required by 28 U.S.C. § 2401(b), the insurers could not be joined as plaintiffs. Therefore, the court dismissed the complaint with prejudice, and Executive Jet perfected this appeal.

I

In the view that we take of this case, we need not decide whether the effect of the loan receipt arrangement is governed by state or federal law. It is conceded that under the law of Ohio payment pursuant to a loan receipt is considered outright payment and does not avoid subrogation of the insurer. Cleveland Paint & Color Co. v. Bauer Mfg. Co., *supra*, 155 Ohio St. 17, 97 N.E.2d 545 (1951). In our opinion the federal courts should follow the same rule. Thus we would reach the same result on the subrogation issue regardless of whether we apply the State law of Ohio or federal law.

Executive Jet insists that the federal practice has been to respect the form of loan receipts and to find no subrogation

---

2. The claim letter provided as follows:

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Mr. John A. Shaffer, Administrator
   Federal Aviation Administration
   800 Independence Avenue, S.W.
   Washington, D. C.

Re:      Crash of Executive Jet Aviation, Inc's Falcon Jet, Registration No. N367EJ, at Burke Lakefront Airport, Cleveland, Ohio, on July 28, 1968

Dear Mr. Shaffer:

This law firm has been retained by Executive Jet Aviation, Inc. and Executive Jet Sales, Inc. to recover all damages incurred as a result of the above crash. This letter will constitute a written claim presented to the appropriate federal agency as required by the Federal Tort Claims Act, 28 U.S.C. § 2675(a).

Executive Jet Sales, Inc. and Executive Jet Aviation, Inc., the owner and operator respectively of a Falcon Jet Registration No. N367EJ, hereby claim the sum of $1,763,-643.64 from the United States of America as damages resulting from the negligence of employees of the Federal Aviation Administration while acting within the scope and course of their employment. The particular allegations of negligence of these employees and the damages incurred are set forth in the complaints being filed in the following two actions:

1. Executive Jet Aviation, Inc. and Executive Jet Sales, Inc., Plaintiffs, v. United States of America, Defendant (U.S.District Court, N.D. Ohio)

2. Executive Jet Aviation, Inc. and Executive Jet Sales, Inc., Plaintiffs, v. City of Cleveland, Ohio, Phillip A. Schwenz and Howard E. Dicken, Defendants (Court of Common Pleas, County of Cuyahoga, State of Ohio)

Xerox copies of these complaints are enclosed and all allegations stated therein are hereby incorporated by reference into this letter.

We would appreciate being advised as soon as possible whether the United States intends to deny this claim. Your early attention to this matter will be appreciated.

when this device is employed. Principal reliance is placed on Luckenbach .v. W. J. McCahan Sugar Refining Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170 (1918), an admiralty case in which the Supreme Court considered a loan receipt transaction and found "no good reason . . . either for questioning its legality or for denying it effect." *Id.* at 148, 39 S.Ct. at 55. *Luckenbach*, however, is distinguishable because of its unusual factual setting. In that case the insurer was liable only contingently—it would have incurred liability to the insured shipper only after it had been established that recovery against the carrier for the lost cargo was impossible. Furthermore, if the insurer had paid the shipper outright before the carrier's liability had been determined, the carrier would have become liable to no one. Therefore, the loan receipt device was used so that the insured would not be deprived of the use of the money for which either the insurer or the carrier eventually would incur liability.

Thus in *Luckenbach* there were present at least some of the indicia of a true loan. In the case at bar, not only were the insurers absolutely liable to Executive Jet, but the terms of the loan did not require repayment of a definite sum at a definite time and did not assess any interest charges. Nor is it mere coincidence that the amount loaned was precisely equal to the aircraft's agreed value in the insurance policy. Further, we note that under the loan receipt agreement the insurers assumed the expense, control, and direction of litigation against any third parties who might be liable for the plane crash. This, of course, is precisely the result that would be achieved in the ordinary case of payment and subrogation. These circumstances lead us to conclude that the transfer of $1,300,000 to Executive Jet was a loan in name only. In fact it was an outright settlement of a loss covered under the insurance policy, and we are unwilling to permit the form of the transaction to control its substance.

Executive Jet insists, however, that it does not rely solely upon *Luckenbach* and that subsequent federal cases have given literal effect to loan receipt agreements in circumstances similar to those in the case at bar. Executive Jet refers us particularly to Augusta Broadcasting Co. v. United States, 170 F.2d 199 (5th Cir. 1948), a case under the Tort Claims Act in which the court held "that the giving of the loan receipt did not affect [the insured's] right to sue . . .." *Id.* at 200. However, the court in that case stated its conclusion without any reasoning or analysis. Moreover, it appeared to rely only on *Luckenbach* and a decision by the Georgia Court of Appeals. Obviously the Georgia case can provide no support for Executive Jet's position, and insofar as *Augusta Broadcasting* relies on *Luckenbach*, its theoretical underpinnings seem weak.

In many of the other cases cited by Executive Jet as authority for giving literal effect to loan receipts, the court looked for guidance to *Luckenbach* or to state law or to both. *See, e. g.,* Sanders v. Liberty Mut. Ins. Co., 354 F.2d 777 (5th Cir. 1965); Export Leaf Tobacco Co. v. American Ins. Co., 260 F.2d 839 (4th Cir. 1958); Dixey v. Federal Compress & Warehouse Co., 132 F.2d 275 (8th Cir. 1942); First Nat'l Bank v. Lloyd's of London, 116 F.2d 221 (7th Cir. 1940). These cases would seem subject to the same observations we made about *Augusta Broadcasting*. In any event, we do not find the reasoning in this line of cases to be compelling in the case at bar.

On the other hand, we note that our conclusion is supported by the relatively recent case of City Stores Co. v. Lerner Shops, Inc., *supra*, 133 U.S.App.D.C. 311, 410 F.2d 1010 (1969). In this case the court first analyzed *Luckenbach* and found it not controlling. It could discern only one purpose for the use of a loan receipt—to avoid subrogation and thereby to circumvent the requirement of the Federal Rules that "[e]very action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a). The court summed up its views about loan receipts as follows:

"It does not seem sensible to say that an insured who has been paid in full by his insurer is nevertheless the real party in interest merely because of a sham 'loan agreement' which is a transparent subterfuge to avoid subrogation and to evade a federal rule." 410 F.2d at 1015.

We agree with the reasoning and with the decision in the *City Stores* case, and we note that it does not stand alone among federal cases in refusing to give literal effect to a loan receipt. *See* Potomac Elec. Power Co. v. Babcock & Wilcox Co., 54 F.R.D. 486, 489 (D.Md.1972) (concluding that a loan receipt "hardly amounts to a bona fide loan"); Condor Inv. Co. v. Pacific Coca-Cola Bottling Co., 211 F.Supp. 671 (D.Or.1962) (finding outright payment despite use of loan receipt).

■ We hold, then, that despite the use of the loan receipt, when the insurers in this case transferred $1,300,000 to Executive Jet, they became subrogated to Executive Jet's claims against the Government. That being so, the insurers are real parties in interest under Federal Rule 17(a) to the extent of the payment. United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 380–382, 70 S.Ct. 207, 94 L.Ed. 171 (1949).

## II

Executive Jet's complaint prayed for damages in the amount of $1,763,643.64, including $13,643.64 for salvage costs, $200,000 for loss of use of the aircraft, and $1,550,000 for injury to the aircraft itself. Executive Jet received only $1,300,000 from the insurers. Despite this, the District Court dismissed Executive Jet's complaint in its entirety, apparently concluding that the insurers were subrogated to the insured's whole claim. The Government attempts to justify this result by arguing that the $1,300,000 agreed value set forth in the insurance policy is conclusive as to the fair market value of the plane before the crash and thus establishes a maximum recovery for loss of the aircraft itself. In addition, the Government insists that

Executive Jet's claims for salvage expenses and loss of use are spurious as a matter of law.

■ Under Ohio law, the measure of damages for injury to personal property is the difference between the fair market value of the property before the damage occurred and its fair market value after the damage occurred. Falter v. City of Toledo, 169 Ohio St. 238, 158 N.E.2d 893 (1959); Otte v. American Airlines, Inc., 104 Ohio App. 517, 522, 145 N.E.2d 322, 325 (1957). The pre-injury fair market value of the aircraft in question here is an issue of fact to be decided upon the relevant evidence adduced at trial. The value set by Executive Jet and its insurers may be probative of the plane's value for purposes of computing damages, but it does not conclusively establish a maximum recovery as a matter of law. This is the effect of our decision in Taylor v. B. Heller & Co., 364 F.2d 608, 612–613 (6th Cir. 1966) (applying Ohio law); *see* Maloney v. General Tire Sales, Inc., 34 Ohio App.2d 177, 185–186, 296 N.E.2d 831, 837 (1973).

■ It also appears that in Ohio a litigant may recover for loss of the use of personal property if the property was damaged but not if the property was totally destroyed. Hayes Freight Lines, Inc. v. Tarver, 148 Ohio St. 82, 73 N.E.2d 192 (1947). We note that Executive Jet's original complaint alleged that the aircraft was "totally destroyed." Subsequently the District Court permitted Executive Jet to file an amended complaint alleging that the plane was "extensively damaged." Thus the facts necessary to support a claim for loss of use were set out properly in the pleadings. Whether the aircraft actually was destroyed or merely damaged is a question for the trial court to decide upon the evidence presented by the parties. We cannot resolve that factual issue at this stage in the proceedings, nor can we hold the claim for loss of use spurious as a matter of law.

■ Finally, the Government argues that Executive Jet's claim for salvage expenses of $13,643.64 is spurious be-

cause $50,000 was received for the wreckage of the aircraft after the accident. Therefore, the argument goes, Executive Jet already has been compensated fully for the cost of salvaging the downed plane. As we understand the law of Ohio, the $50,000 received by Executive Jet constitutes evidence of the plane's fair market value after the crash. As such, it would be deducted from the pre-accident fair market value in determining damages for the injury to the plane itself. *See* Maloney v. General Tire Sales, Inc., 34 Ohio App.2d 177, 296 N.E.2d 831 (1973); Powell v. Bishoff, 23 Ohio App.2d 173, 261 N.E.2d 302 (1970). Therefore, it should be a matter of little moment to the Government whether the $13,643.64 in salvage expenses is treated as a separate item of damages or is used, as the Government suggests, to offset part of the $50,000 salvage price received by Executive Jet. If determined to be liable, the Government would be subject to the same net recovery in either case.

However, this question conceivably could be of importance to Executive Jet. The salvage expenses may constitute an uninsured loss if they are treated as a separate item of damages, but not if they merely reduce the salvage value of the aircraft. The resolution of this issue will depend in part upon the terms of the hull insurance policy, which does not appear in the record before us. In any event, we believe that this question in the first instance should be specifically considered by the District Court.

It may develop at trial that Executive Jet is unable to prove that it has sustained any uninsured losses. Nevertheless, we conclude that the allegations in its complaint are sufficient to permit Executive Jet to introduce its evidence. We cannot say as a matter of law that Executive Jet has suffered no uninsured losses. Thus according to the averments of the complaint in this case there has been only a partial subrogation, and both Executive Jet and its insurers are real parties in interest.

### III

When an action is prosecuted in the name of a person who is not the real party in interest, dismissal is not necessarily the appropriate course. The last sentence of Rule 17(a) provides as follows:

"No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Fed.R.Civ.P. 17(a).

In this case, however, the Government insists that the District Court was required to grant a pro tanto dismissal to the extent of the insurers' claims. This argument is based on 28 U.S.C. § 2401(b), which provides as follows:

"(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented. As amended July 18, 1966, Pub.L. 89–506, § 7, 80 Stat. 307."

Because the insurers neither filed their own administrative claim nor expressly joined in Executive Jet's claim within the two-year limitations period, the Government contends that the insurers are forever barred from recovery under the Tort Claims Act. Furthermore, as the Government points out, the administrative claim procedure prescribed in 28 U.S.C. § 2675 [3] is jurisdictional. No suit

---

**3.** 28 U.S.C. § 2675 provides as follows:

(a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property

or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or em-

may be maintained under the Act in the absence of compliance, which cannot be waived by the Government. Caton v. United States, 495 F.2d 635 (9th Cir. 1974); Best Bearings Co. v. United States, 463 F.2d 1177 (7th Cir. 1972); Bialowas v. United States, 443 F.2d 1047 (3d Cir. 1971).

■ For the reasons stated below, we conclude that on the particular facts of this case the administrative claim filed by Executive Jet served to toll the limitation period of § 2401(b) with respect to the claim of the insurers. Therefore, Executive Jet should be permitted to amend its administrative claim to show the insurers as joint claimants, and the insurers should be given an opportunity to join in this action as plaintiffs.

■ The present mandatory administrative claims procedure was added to the Federal Tort Claims Act in 1966. Act of July 18, 1966, Pub.L.No.89–506, 80 Stat. 306. The purpose of the amendment was not to make recovery from the Government technically more difficult. Rather, the purpose was "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." S.Rep.No.1327, 89th Cong., 2d Sess. (1966), U.S.Code Cong. & Admin.News, p. 2516. The decision we have reached in this case is entirely consistent with the purpose of the 1966 amendments. Within one year after the crash, the Federal Aviation Administration received a formal written notice fully detailing the nature and amount of the claim that Executive Jet was assert-

ing against the United States. It does not appear that the Government would have been more inclined or better able to negotiate a settlement of the claim if the insurers had been listed as claimants. In fact, the Government is asserting as defenses lack of negligence, assumption of the risk, and contributory negligence. Thus it appears that litigation would have been necessary even if the insurers had filed an administrative claim. It seems unlikely that the Government would have wished to settle this large and factually unusual claim, but it certainly was not prevented from attempting a compromise simply because the insurers did not join in Executive Jet's administrative claim.

Similarly, we believe that our decision in this case is not at odds with the underlying purpose of the limitations period established by § 2401(b). The general purpose of statutes of limitations has been well stated as follows:

"Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348–349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944).

ployment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

(b) Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

(c) Disposition of any claim by the Attorney General or other head of a federal agency shall not be competent evidence of liability or amount of damages.

In the case at bar, Executive Jet presented its claim well within the statutory period. At that point the Government was on sufficient notice to begin assembling witnesses and evidence in preparation for a defense on the merits. In no sense was this claim permitted to slumber or to become stale. Indeed, under general principles of subrogation, the subrogee stands in the shoes of the subrogor. Aetna Ins. Co. v. Loveland Gas & Elec. Co., 369 F.2d 648, 650 (6th Cir. 1966) (applying Ohio law). Thus it is difficult to see how the Government's substantive defense would have been affected if the insurers had joined in Executive Jet's administrative claim and in the present litigation.

In addition, the United States cannot claim surprise at the insurers' late entry into the case. The Government does not argue that it was unaware of the insurers' interest in the claim. In fact, the Government raised in its answer the defense that Executive Jet was not the real party in interest, and this pleading was filed more than one year before the statute of limitations had run. We are convinced that our decision in no way will prejudice the Government except insofar as it may have hoped to avoid entirely a substantial portion of its potential liability through an adroit application of § 2401(b). On the other hand, it is clear that to sustain the Government's position would produce a harsh result for the insurers, for they would be left with no recourse against the United States, which is alleged to have been the party ultimately responsible for this airplane accident.[4]

4. We note that we are not alone in holding that the technical procedures of the Tort Claims Act must give way to the clear demands of justice. For example, in Sky Harbor Air Service, Inc. v. United States, 348 F.Supp. 594 (D.Neb.1972), the insured filed an administrative claim that listed the names of the insurers together with the amounts paid by them. However, the insurers were not designated formerly as claimants. After the insured and the insurers had commenced suit against the United States, the statute of limitation ran, and it appeared that the insurers were partially subrogated and to that extent the real parties in interest. The Government argued that since the insurers never filed their own administrative claim, summary judgment against them was required. The court characterized the Government's position as standing upon "quicksand" and concluded that the insured's filing was effective also for the insurers.

In Ozark Air Lines, Inc. v. Delta Air Lines, Inc., 63 F.R.D. 69 (N.D.Ill.1974), Delta filed an administrative claim as the owner of a plane that had been involved in a collision. In the ensuing litigation it developed that in fact Delta was only the lessee of the aircraft. The Government asserted that the administrative claim was, therefore, defective and insufficient to confer jurisdiction over a Tort Claims Act case. The court found the Government's argument "hypertechnical" and held that the Act's claim procedure requirements had been satisfied.

In Young v. United States, 372 F.Supp. 736 (S.D.Ga.1974), a husband filed an administrative claim in connection with the death of his wife, but no reference was made to the minor children, who under state law also had a cause of action for the death of their mother. At trial, the Government moved to dismiss the children because of their failure to file administrative claims. After a lengthy discussion of tort claim procedures and the applicable regulations, the court found in favor of the children, upon whom "strict reliance on the technicalities of the Regulations would work an injustice. . . ." Id. at 741. In a factually similar case, another district court has reached essentially the same result. Locke v. United States, 351 F.Supp. 185 (D.Hawaii 1972). Cf. Stokes v. United States, 444 F.2d 69 (4th Cir.), cert. denied, 404 U.S. 1002, 92 S.Ct. 571, 30 L.Ed.2d 743 (1971).

Finally, there are several cases in which litigants have been permitted to sue the United States for damages in excess of the amount stated in the administrative claim despite the prohibition of such suits in 28 U.S.C. § 2675(b). See, e. g., McCarter v. United States, 373 F.Supp. 1152 (E.D.Tenn. 1973); Little v. United States, 31', Supp. 8 (E.D.Pa.1970); Rabovsky v. United States, 265 F.Supp. 587 (D.Conn.1967). These cases purported to rely upon the express "newly discovered evidence" exception to the general rule of § 2675(b). However, in each case the court clearly was straining the exception to avoid the unjust result that a strictly literal application of the statute seemed to require.

We recognize that none of the cases discussed above is precisely analogous to the case at bar. Nevertheless they do support our conclusion that technical failure to comply with the administrative claim procedures is not necessarily fatal to recovery, particularly when the Government is not prejudiced by the noncompliance.

In American Pipe and Construction Co. v. Utah, 414 U.S. 538, 559, 94 S.Ct. 756, 769, 38 L.Ed.2d 713 (1974), the Supreme Court said:

"These cases fully support the conclusion that the mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose."

Our decision rests to a large extent on the particular facts of this case. Thus we intimate no opinion about the proper result in generally similar situations not involving subrogation, nor in cases in which the subrogor has not filed a timely and complete administrative claim. We are convinced, however, that in this case it is appropriate to consider the § 2401(b) statute of limitations tolled so that Executive Jet's insurers may join in this litigation as plaintiffs.

The judgment of the District Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

No costs are taxed. Each party will bear its own costs on this appeal.