POOLE *v.* CHRISTIAN ET AL.

(No. 79CV02639—Decided April 3, 1980.)

Hamilton County Municipal Court.

*Mr. Gregory Park,* for plaintiff.
*Mr. Jerome L. O'Dowd,* for defendants.

NADEL, J.

## I.
## FINDINGS OF FACT

In August, 1977, the plaintiff, Charles Poole ("Poole"), and defendants, Melvin Christian and Dan Clark, d.b.a. Clark & Christian Moving & Storage Co. ("Clark & Christian"), entered into a contract for the storage of Poole's household and other furnishings. This contract set up a monthly payment arrangement whereby a charge of $15 would be due by the 9th of each month. Poole paid the first installment and then left town, not to return until December, 1977. Having not made any further monthly payments during his absence, Poole was in arrears of $75 in December.

In a letter dated December 13, 1977, Clark & Christian began a series of delinquency notices addressed and mailed to Poole at the address last known to them. This first notice informed Poole that his account was five months past-due, that he owed $75, and that he should contact the business to arrange payment.

A second letter dated February 15, 1978, was sent to Poole by certified mail and contained two pieces of information. First, it stated that the goods in storage would be "sold at Public Auction unless all charges [were] paid in full in ten (10) days." Second, it listed the back storage bill as $90.

A third letter dated March 13, 1978, announced a date, time and place at which the stored goods would be sold by auction. No other information was contained in this letter.

Clark & Christian placed an advertisement with the Cincinnati Enquirer, a local newspaper of general circulation, on March 11, 1978, and March 18, 1978, announcing the date, time and place of the public auction at which Poole's goods were to be sold. In addition to this information the advertisement carried the names of nine additional Clark & Christian customers whose stored goods were slated for sale at the auction. The only description of the kinds of goods to be sold was the term "Household goods," and this single designation was intended to apply to all ten customers whose names were contained therein.

On April 1, 1978, five of Poole's goods were sold at the public auction. These included a vintage barber chair, a mirrored cabinet, a refrigerator, a washing machine and a box-spring and mattress. Other goods not sold were returned to the warehouse where they remain. Poole's arrearage balance of $105 was paid by the proceeds of the sale of his goods. In December, 1978, Clark & Christian refunded to Poole $98, the amount over and above the storage fees and costs of sale incurred by Clark & Christian and recovered as a result of the sale. Thereafter, Poole commenced this suit in conversion alleging that defendants failed to adhere to the warehouseman's lien foreclosure procedure found in R. C. 1307.15(B).

During the course of the trial Poole testified as to his ownership and delivery of the goods to Clark & Christian, and as to their personal value to him, an amount which totaled $700. In so doing, he testified as to the original purchase price of each item, its condition when first bought, and its condition at time of storage.

## II.
## CONCLUSIONS OF LAW

The evidence shows that the parties to this contract for

storage consisted of a "warehouseman," as that word is defined at R. C. 1307.01(A)(8), and a non-merchant bailor of goods. As such, any lien which attached to the bailed goods for nonpayment of the storage fees was subject to the lien foreclosure procedure contained in R. C. 1307.15(B). That section requires several affirmative actions by the warehouseman in perfecting a lien foreclosure, including notification by registered letter to the bailor or other interested party. This notification pursuant to R. C. 1307.15(B)(3) must include: "an itemized statement of the claim, a description of the goods subject to the lien, a demand for payment within a specified time not less than ten days after receipt of the notification, and a conspicuous statement that unless the claim is paid within that time the goods will be advertised for sale and sold by auction at a specified time and place."

The advertisement, pursuant to R. C. 1307.15(B)(6), must include: "a description of the goods, the name of the person on whose account they are being held and the time and place of the sale."

Clark & Christian failed to comply with this procedure in at least two respects. First, although the three letters sent Poole together contain most of the information required by the statute, no one letter by itself is complete. None include a description of the goods. Only the first two contain an (unitemized) balance due, and none contain the proper combination of a demand for payment within ten days and a statement warning of the advertisement and auction sale of the goods at a specified time and place.

Second, the advertisement listed a total of ten Clark & Christian customers whose goods were to be sold, but the goods of each customer were not individually described. Instead, all goods were lumped together and identified by the term "Household goods." The clear intent of the requirement that a description of the goods be provided is to inform and entice the public to attend the sale and bid on the subject goods. Only in this way can a foreclosure sale properly protect the customer, who may forfeit all of his belongings, by encouraging as many bidders as possible. An advertisement which describes the belongings of ten people by using the facile term "Household goods" fails of this purpose even if the identification is itself accurate. The statute required

Clark & Christian to separately itemize and describe the goods which would be offered for sale.

The court is unaware of any reported Ohio cases which interpret the warehouseman's lien foreclosure procedure. Poole contends, however, and this court agrees and so concludes, that the defendants were subject to a standard of strict compliance in foreclosing their valid lien on Poole's goods for his nonpayment of the storage fees. The language of the statute itself, at R. C. 1307.15(B), mandates this result when it states that: "A warehouseman's lien on goods other than goods stored by a merchant in the course of his business may be enforced *only* as follows:" (Emphasis supplied.)

Moreover, the statute grants a warehouseman a summary foreclosure procedure, which remedy apparently did not exist at common law. The statutory remedy requires strict compliance for the protection of the bailor and it imposes no undue burden upon the warehouseman. Other courts are in accord. *Suddath Moving & Storage Co.* v. *Roure* (Fla. App. 1973), 276 So. 2d 549; *Flores* v. *Didear Van & Storage Co., Inc.* (Tex. Civ. App. 1972), 489 S.W. 2d 406; *Schmidt* v. *Cowen Transfer & Storage Co.* (1970), 170 Colo. 550, 463 P. 2d 445.

The defendants' violations of the statute gave rise to Poole's claim for conversion and damages. R. C. 1307.15(I). In this regard Poole proved his ownership of the goods, their delivery to Clark & Christian, and the unlawful sale by auction of five of the bailed goods.

The measure of damages for loss or conversion of bailed goods is the reasonable worth to the owner who may testify as to same. *Layton* v. *Ferguson Moving & Storage Co.* (Hamilton Co. 1959), 109 Ohio App. 541, 160 N.E. 2d 138. Poole's testimony described the goods sold, stated the date, price and condition of each item when acquired by him, described the condition of each upon delivery to Clark & Christian, and stated a personal opinion as to the value of each at the time of storage. The court concludes from his testimony that the reasonable value of the five items sold at auction is $700, and that this being an action in conversion, plaintiff ought to recover from defendants the actual value thereof.

Defendants are required to pay to plaintiff the sum of $700 and judgment for plaintiff is so rendered.

*Judgment for plaintiff.*