**HIMMELSBACH–PRESTON, Plaintiff,**

v.

**ROYAL CUSTOM CLEANERS, Defendant.**

2005-Ohio-7145.]

Clermont County Municipal Court, Ohio,
Small Claims Division.

No. 2004–CVI–05384.

Decided June 29, 2005.

36

Carol Himmelsbach–Preston, pro se.

W. Kenneth Zuk, for defendant.

HADDAD, Judge.

{¶ 1} On April 12, 2005, this matter came before the court for oral argument on defendant's Objections to Magistrate's Report, which defendant, Royal Custom Cleaners, filed on February 18, 2005. Upon hearing oral argument, the court took the matter under advisement and now renders the following decision.

### FINDINGS OF FACT

{¶ 2} Defendant objects to the magistrate's decision filed February 8, 2005, in which plaintiff was awarded $810 plus interest and costs for damages to her Amish quilt. On November 27, 2004, plaintiff, Carol Himmelsbach–Preston, took her handmade Amish quilt to Royal Custom Cleaners for dry cleaning. She informed defendant's employee that the quilt was handmade and inquired whether they could clean the quilt for her. Defendant's employee assured her that they could clean it.

{¶ 3} The owner of Royal Custom Cleaners, Peter J. Hartman Sr., personally attended to plaintiff's quilt. He testified that he followed his ordinary practice of testing areas of the quilt with paint, oil, and grease remover to check for dyes that could potentially bleed in the dry-cleaning process. After testing areas of the quilt and discovering no problems, Hartman placed the quilt in his dry-cleaning machine. Hartman stood nearby and watched as he started the machine. As soon as the chemical perchlorethylene came in contact with the quilt, dyes on the quilt began to bleed. Hartman promptly stopped the machine, extracted the perchlorethylene from the machine, and put the quilt through a dry cycle in the machine.

{¶ 4} When the quilt was returned to plaintiff in a damaged condition, she confronted Hartman, who refused to accept responsibility for damage to the quilt. He told her that she should return her quilt to the Amish. He told her that the Amish should have placed a care label on the quilt, and allegedly offered her copies of brochures similar to defendant's exhibits A and B. Defendant submits that these two exhibits set forth the standards in the dry-cleaning industry.

{¶ 5} Plaintiff testified that she used her Amish quilt on special occasions for aesthetic purposes. The quilt, in its damaged condition, no longer has any aesthetic value to plaintiff.

{¶ 6} In support of its Objections to Magistrate's Report, defendant contends that the magistrate ignored federal law and Federal Trade Commission regulations in entering her judgment.

## CONCLUSIONS OF LAW

{¶ 7} A magistrate has been viewed as "an arm of the court," whose decisions carry a "presumption of correctness," but the trial court is by no means required to adopt the decision of a magistrate. *Cox v. Cox* (Feb. 16, 1999), Fayette App. No. CA98–05–007, at 3, 1999 WL 74573. When a party objects to the report of a magistrate, the court must conduct an independent analysis to ascertain whether the magistrate has properly determined the factual issues and then appropriately applied the law to those factual findings. *Inman v. Inman* (1995), 101 Ohio App.3d 115, 655 N.E.2d 199. Even if a party fails to object to a matter contained in the magistrate's report, the court still has the discretion, if not the responsibility, to "critically review and verify to its own satisfaction the correctness of such a report." *Normandy Place Assoc. v. Beyer* (1982), 2 Ohio St.3d 102, 105, 2 OBR 653, 443 N.E.2d 161; *Cyr v. Cyr,* Cuyahoga App. No. 84255, 2005-Ohio-504, 2005 WL 315375, at ¶ 11. The court's review of the record is de novo. *Cox,* supra. Upon review, the court may "adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter." Civ.R. 53(E)(4)(b).

{¶ 8} The relationship between a dry-cleaning business and its customer is considered a bailment for hire. *Dixon v. Millhorn* (1936), 55 Ohio App. 193, 8 O.O. 469, 9 N.E.2d 183. A bailee for hire has a duty to exercise ordinary care in the treatment of the bailor's property. *David v. Lose* (1966), 7 Ohio St.2d 97, 36 O.O.2d 81, 218 N.E.2d 442. As part of the bailment contract, the bailee promises to return the bailor's property to the bailor in an undamaged condition upon termination of the bailment. Id. In order to establish a prima facie case of breach of a bailee's duty, the bailor merely needs to prove the existence of the bailment contract, delivery of bailed property to the bailee, and failure of the bailee to redeliver the bailed property in an undamaged condition. Id. Thus, in

the case of *McFarland v. Forest Hills Cleaners* (July 18, 1985), Cuyahoga App. No. 48774, 1985 WL 8560, the Eighth District upheld a judgment in favor of a dry-cleaning customer when the customer presented facts to indicate that he had delivered his coat to the cleaner pursuant to a bailment for hire and that the coat had sustained damage during the bailment. These facts were sufficient to permit the court to conclude that the damage had resulted from the cleaner's negligence. Id. at 2, 1985 WL 8560.

{¶ 9} Once the bailor has established a prima facie case of breach of duty, the bailee must assert and prove some affirmative defense. Id. If it is known how the damage to the bailed property occurred, then "it is incumbent on the bailee to show that he acted reasonably in that regard." Id. at 100, 36 O.O.2d 81, 218 N.E.2d 442.

{¶ 10} There is a dearth of case law in Ohio concerning the breach of bailment contracts by cleaners, but a review of cases from other jurisdictions provides further insight as to how the law is applied. In *Mass v. Viemont Rug & Carpet Cleaning Co.* (N.Y.App.1958), 9 Misc.2d 959, 173 N.Y.S.2d 963, plaintiff's sofa was damaged when the fabric ran as a result of defendant's shampooing process. The cleaner was found to be negligent, despite the fact that he conducted a patch test prior to shampooing the sofa. The court reasoned that defendant was negligent in either performing his work or in performing the patch test. Id. at 960, 173 N.Y.S.2d 963. Several courts have imposed liability upon a cleaner when an agent for the cleaner made representations that the items in question could be successfully cleaned. *Gugert v. New Orleans Indep. Laundries* (La.App.1938), 181 So. 653; *Brooks v. Angelo's Cleaners* (1984), 103 A.D.2d 923, 477 N.Y.S.2d 922; and *Axelrod v. Wardrobe Cleaners, Inc.* (La.App.1974), 289 So.2d 847. In *Axelrod*, the court noted that sometimes a prudent bailee may have to simply refuse to accept an item if the bailee has any doubt as to the advisability of dry cleaning the item.

{¶ 11} In the instant case, defendant holds itself out to be a professional dry-cleaning establishment. Although the owner testified as to the measures he took to check the colorfastness prior to putting the quilt in the dry-cleaning machine, there is no indication of whether those measures were adequate to fulfill industry standards. Defense exhibits A and B do not set forth the industry standards for dry cleaners in this respect; they merely explain the duties of garment makers.

{¶ 12} The court notes that the chemical used to conduct the patch test and the chemical used in the actual dry-cleaning process were two different substances. Defendant explained that the chemical used in the dry-cleaning process cannot be used outside the dry-cleaning machine. Defendant, however, failed to explain why the paint, oil, and grease remover would be an adequate

substitute for purposes of conducting a patch test. He did not present any evidence as to the similarity of the two substances, or any authority to prove that this was the best substance available for patch testing. It appears to this court that either defendant's method for testing colorfastness was inadequate or he should have, at a minimum, conducted further testing.

{¶ 13} Defendant's objections place much emphasis on the fact that plaintiff's quilt had no care label attached to it. The court agrees that a care label is beneficial in determining how to clean a particular item. If, however, the absence of a care label is of such critical importance to a dry cleaner, then it might be best for a prudent dry cleaner to refuse to accept items without care labels. Defendant's employee represented that the company could clean the quilt. Hartman, on the other hand, apparently had misgivings about cleaning an item without a care label. At a minimum, he should have conveyed these concerns to plaintiff and given her an opportunity to decide whether to proceed with the cleaning. The court finds defendant liable for its failure to return the quilt in an undamaged condition, and the magistrate's report is adopted as to this issue.

{¶ 14} Defendant contends that the magistrate failed to recognize federal regulations pertaining to the care-label rule. The care-label rule, as explained in the brochures labeled defendant's exhibits A and B, does not apply to household linens. Exhibit A at ¶ 1 ("The rule covers all textile clothing except footwear, gloves, hats, suede and leather clothing, and household items such as linens"). See, also, 16 C.F.R. 423.1 and 16 C.F.R. 423.3. Even if the quilt maker had a duty pursuant to the care-label rule, the defendant still has failed to cite any authority that absolves him from liability in the absence of a care label. Furthermore, the court has been unable to find any authority for the proposition that defendant should be absolved of liability. The court finds no merit in defendant's contention that the magistrate ignored federal law.

{¶ 15} Before addressing the appropriate measure of damages, the court deems it necessary to address a preliminary evidentiary matter. At trial, defendant's attorney objected to the introduction of plaintiff's exhibits 1 through 3, which contain, inter alia, estimated replacement costs for her Amish quilt. These estimates were obtained from the Internet. The magistrate overruled defendant's hearsay objection, inasmuch as the case was tried in the small-claims division. The rules of evidence do not apply to small-claims cases. Evid.R. 101(C)(8); *Turner v. Sinha* (1989), 65 Ohio App.3d 30, 582 N.E.2d 1018; *Newstate v. Maguire*, Athens App. No. 01CA 43, 2002-Ohio-6145, 2002 WL 31520355. If defendant wished to proceed in a more "formal" fashion, it should have moved to transfer its case to the court's regular docket pursuant to R.C. 1925.10. *Maguire*, 2002 WL 31520355, ¶ 19. The magistrate properly overruled defendant's objection.

{¶ 16} Although defendant's written objections do not assign as error the amount of damages awarded by the magistrate, the court still has the discretion to review this portion of the magistrate's decision. *Normandy,* 2 Ohio St.3d 102, 2 OBR 653, 443 N.E.2d 161; *Cyr,* Cuyahoga App. No. 84255, 2005-Ohio-504, 2005 WL 315375. The court deems it appropriate to consider not only the additional issues presented at the objection hearing, but also the additional evidence presented at the objection hearing. Civ.R. 53(E)(4)(b).

{¶ 17} When an item is destroyed or lost while in the possession of a bailee, the measure of damages is ordinarily determined by the fair market value of the item, if it has such a value. *Maloney v. Gen. Tire Sales* (1973), 34 Ohio App.2d 177, 184, 63 O.O.2d 289, 296 N.E.2d 831. The value of the item must be determined as of the time of the loss. Id. If property is partially destroyed or impaired in value while in the hands of the bailee, then the measure of damages is the difference between the value of the property immediately before and immediately after the damage. Id.

{¶ 18} If market value cannot be adequately determined, the court may resort to a more "elastic standard" known as the standard of value to the owner. *Cooper v. Feeney* (1986), 34 Ohio App.3d 282, 283, 518 N.E.2d 46. In determining the standard of value to the owner, the court may consider a number of factors, such as original cost, replacement cost, and salvage value, if any. Id. The court must also take into consideration the age and condition of the damaged property prior to the loss. Id. at 284, 518 N.E.2d 46. It is particularly appropriate to measure an item in terms of its reasonable worth to the owner when the bailed property is of a personal nature. *Poole v. Christian* (1980), 64 Ohio Misc. 32, 35, 18 O.O.3d 75, 411 N.E.2d 513; *Welch v. Smith* (1998), 129 Ohio App.3d 224, 230, 717 N.E.2d 741.

{¶ 19} Since plaintiff's quilt can no longer be used for its intended purpose, the court deems it appropriate to award the full fair market value of the quilt as of the time of the loss. Unfortunately, since the quilt is of a personal nature, it is difficult to place a fair market value on it. Thus, the court may resort to the "standard of value" to plaintiff, considering not only the original cost, but the replacement cost, and the age of the quilt.

{¶ 20} In the instant case, the magistrate based the damages award upon the replacement cost of the quilt. This award did not take into consideration the fact that plaintiff's quilt was four years old. Thus, the award essentially allows plaintiff to replace her four-year-old quilt with a brand-new one. At the objection hearing, defendant suggested that depreciation should at least be figured into the award. Defendant did not present any evidence as to the rate of depreciation, either at trial or the objection hearing. The court has no reliable basis upon

which to figure depreciation and declines to engage in speculation and conjecture. Plaintiff has failed to present any evidence that her four-year-old quilt appreciated in value, or at what rate. Although plaintiff presented some evidence as to what new Amish quilts cost today, it does not necessarily follow that her quilt, prior to damage, was worth the same amount.

{¶ 21} The estimated replacement costs submitted by plaintiff range from $810 to $999.99. At trial, plaintiff testified that the original cost of her quilt was $400. Plaintiff stated at the objection hearing that the original cost of her quilt was $536. Regardless of which figure is accepted, the court finds it difficult to account for the substantial price increase over a four-year period. The court further finds it impractical, if not impossible, to compare plaintiff's quilt with pictures from the Internet, because there is no way to inspect the intricate details in the photographs. If plaintiff had presented an estimated replacement cost from the maker of her original quilt, such a figure would be more probative of the actual replacement cost, since a replacement quilt from the original maker would more closely resemble the pattern, details, fabric, and workmanship used in plaintiff's quilt. For these reasons, the court finds plaintiff's Internet exhibits to be of limited value in assessing the amount of damages. These exhibits, however, do tend to prove that the replacement cost will be higher than the original cost of the quilt.

{¶ 22} Taking the above factors into consideration, the court awards the original cost of the quilt to plaintiff. The court finds the original cost of the quilt to be $400, because this is the figure that plaintiff testified to under oath at trial. While the court does not question the plaintiff's credibility as to the $536 original-cost figure, the court cannot justify using this figure without some documentation to explain the discrepancy between plaintiff's testimony at trial and statements made in subsequent hearings.

{¶ 23} Based upon the competent, credible evidence presented at trial and in subsequent proceedings, the court hereby adopts the magistrate's report as to the issue of liability and modifies the report insofar as the amount of damages is concerned. Plaintiff is granted judgment in her favor in the amount of $400 plus costs and interest.

So ordered.